## TRACY v. TERMINAL R. ASS'N OF ST. LOUIS.

### No. 13594.

United States Court of Appeals Eighth Circuit.

Nov. 9, 1948.

John H. Haley, Jr., of St. Louis, Mo. (Charles P. Noell and Ford W. Thompson, both of St. Louis, Mo.; on the brief), for appellant.

Arnot L. Sheppard, of St. Louis, Mo., for appellee.

Before GARDNER, Chief Judge, and THOMAS and RIDDICK, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought by appellant as administratrix of the estate of her deceased husband under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages for injuries to and death of her husband. At the time of receiving his injuries appellant's husband, Joseph Tracy, was employed by appellee as a switchman. The parties will be re-

ferred to as they were designated in the trial court.

It is alleged in plaintiff's complaint that at the time of receiving his injuries decedent, while engaged in switching cars for defendant, "went in between two cars standing on one of the tracks in defendant's yard," and that while there attempted to do certain work in connection with the air hose; that the train was negligently caused to be moved, resulting in injuries to decedent from which he died eighteen months later. The negligence pleaded is that defendant moved the cars while decedent was standing between two of them without any signal from decedent so to do, it being alleged that the cars should not have been moved while decedent was between the two cars and that defendant failed to sound the locomotive bell before moving the cars.

Defendant's answer admits that decedent was in its employ at the time of receiving his injuries; denies that decedent went in between two cars while they were standing on the tracks and denies that the cars were moved while he was standing between them. It denies that decedent's death was the result of any injuries he received on September 22, 1942, or as the result of any negligence on its part.

At the time of receiving his injuries decedent was the foreman of a switching crew engaged in switching cars in defendant's yards in East St. Louis, Illinois. Following the arrival of a train from Dupo, Illinois, to defendant's East St. Louis yards, Tracy received instructions as to where the cars in the train were to be placed. The train was equipped with air brakes which were in operation. There was a so-called "angle cock" at each end near the drawbar of each car, and when a car was "cut off" the air brake would apply and the car would not roll unless previously the angle cock in the car at the point the train was divided was closed. It was Tracy's duty, among other things, to close angle cocks. The accident occurred at night and communication between members of the crew was by lantern signals. At the time of the accident the train was headed north. Tracy and another Switchman named Fisher were on the ground on the east side of the train and it was intended to cut off some of the cars of the train.

Plaintiff's evidence was to the effect that the train moved to the south and stopped; then Tracy stepped in between two of the cars and in a few seconds the train again moved to the south, whereupon Tracy was heard to call out to switchman Fisher, who signalled for the train to stop. Fisher testified that he found Tracy lying beside the track with his right foot crushed. There was evidence that it was not permissible for a train to be moved after having stopped, while a switchman went between the cars, except on a signal from the switchman, and that no such signal was seen.

Defendant's evidence was to the effect that the train was not standing immediately before Tracy received his injuries but that Tracy ran along beside the train and stumbled on a piece of coal and got his foot run over, or reached between the two cars and in so doing his foot was crushed under the wheel of the car. A witness for the defendant testified that while the train was moving south, Tracy reached between the cars while he was running along the side where the cut was to be made; that he "reached between the cars and hopped out on one foot across the tracks." The witness who so testified was standing ten or twelve feet east from Tracy and he was apparently the only eye witness to the casualty. The head brakeman, the fireman and the yardmaster all testified that the train did not stop at any time immediately before Tracy was injured but that it continued to move from the time it started south until the emergency stop signal was given, whereupon it stopped immediately.

Decedent's foot was so badly crushed that the leg had to be amputated between the ankle and the knee. There was testimony by plaintiff that on the morning following the amputation Tracy had "a lump on the right side of his head." On April 23, 1944, some year and a half subsequent to the injury to his foot, Tracy was operated on for a nerve affliction. In performing the operation the surgeon made an opening about the size of a half dollar in Tracy's skull in the temporal region to cut the

posterior fossa of the trigeminal nerve. The operation, however, was not completed as Tracy went into shock and the operation had to be discontinued. He died April 28, 1944.

The case was submitted to the jury on instructions to which certain exceptions were taken and the jury returned a general verdict in favor of defendant. From the judgment based on this verdict dismissing plaintiff's action, plaintiff appeals, seeking reversal on substantially the following general grounds: (1) the court erred in excluding the testimony of the witness Fisher to the effect that Tracy was closing angle cocks at the time of receiving his injuries although Fisher could not physically see the act being done; (2) the court erred in excluding evidence to the effect that Tracy was doing his work in the usual manner; (3) the court erred in excluding evidence to the effect that it was necessary to close angle cocks; (4) the court erred in excluding evidence to the effect that it was not possible to close angle cocks while the train was in motion; (5) the court erred in excluding evidence of complaints by Tracy as to his physical condition; (6) the court erred in excluding evidence to the effect that the injury to Tracy's head was sufficient that it might have resulted from his injury; (7) the court erred in excluding medical expert testimony as to the cause of Tracy's physical condition and death; (8) the court erred in its charge to the jury to the effect that damages for pain and suffering from head injury were not recoverable unless the injury caused death; (9) the jury was improperly selected and the trial court abused its discretion in not hearing evidence in support of plaintiff's motion for new trial on the ground of newly discovered evidence.

This court, one Judge dissenting, handed down a decision reversing the judgment. Thereafter, on motion for rehearing, the decision was vacated, set aside, opinion withdrawn and the cause resubmitted. Counsel for the respective parties have filed additional briefs and have reargued the case orally.

■ Under the Federal Employers' Liability Act the basis of liability is negligence on the part of the employer. The purpose of the Act was not to render a railroad company an insurer of the safety of its employees, but rather to abolish certain common law defenses which had theretofore been available to a railroad company when sued by its employees for injuries received. As the Act now stands it abolishes the defense embodied in the fellow servant rule, the defense of contributory negligence, and the defense of assumption of risk. As said by us in Terminal Railroad Association v. Howell, 165 F.2d 135, 138, "Under the Federal Employers' Liability Act as it now stands there are no affirmative common law defenses available to the defendant and the only question is whether the injury complained of resulted in whole or in part from the negligence of defendant. Bailey v. Central Vermont Ry., Inc., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967; 45 U.S.C.A. §§ 51 and 54."

In the instant case the only negligence charged against defendant is that it moved its cars from a standing position while Tracy was between two of the cars, without having a signal from Tracy so to do. Whether or not it did so move these cars was the vital and controlling issue which was submitted to the jury. The court in effect told the jury that if they should find that defendant had, without signal, moved the cars from a standing position while Tracy was between them, they should find for plaintiff, and conversely, if they should not so find then their verdict should be for defendant. There were no exceptions to the instructions so far as they referred to defendant's liability.

■ We are of the view that too much stress and emphasis have been given to the question of the acts or movements of Tracy. These acts, or failure to act, have no direct bearing on the question of defendant's liability as contributory negligence may be considered only on the question of the amount of damages to be awarded.

There was a sharp conflict in the testimony on the issue of defendant's alleged negligence. The witness Fisher testified that the cars had been stopped and were standing still and that Tracy stepped in between them while they were so standing;

that while he was in between the cars, and without any signal from Tracy, the cars were moved. Fisher's testimony on this question was in conflict with his own prior signed written statements and it was contradicted by the testimony of defendant's yardmaster, head brakeman and fireman, all of whom were in position to know whether the train had been stopped or not. This testimony of Fisher was also in conflict with the statement made by the deceased when he entered the hospital immediately following his accident. The doctor who first met him at the hospital following the accident testified that, "The patient entered about 3:10 in the morning, September 22, 1942. At that time he stated that about 1:10 a. m., while switching for the Terminal Railroad Association in East St. Louis, Illinois, he stumbled over a piece of coal and got his right foot run over by a tank car."

In this state of the evidence on the controlling issue in the case the court submitted the case to the jury, instructing them that the plaintiff claimed that her deceased husband stepped between the cars mentioned in the evidence while they were standing still; that they were moved while he was standing between two of the cars, at a time when he was not expecting them to be moved; that plaintiff must establish this fact by the greater weight of credible evidence before she is entitled to a verdict in her favor. The court also instructed that if the jury should find that the plaintiff had not established the fact that her deceased husband stepped between the cars at a time when they were standing still their verdict must be in favor of the defendant and against the plaintiff. The court then instructed the jury as follows: "You are instructed that the first question you should determine is whether your verdict should be for plaintiff Cecelia Tracy or defendant Terminal Railroad Association of St. Louis. If you determine the verdict shall be for defendant it will not be necessary to consider the question of damages."

There were no exceptions to these instructions. The jury had been specifically directed first to determine whether their verdict should be for the plaintiff and that depended upon whether or not she had proven that her deceased husband stepped between the cars while they were standing still and that the cars were moved while he was between them, without signal so to do. As has been observed, the jury determined the issue of fact so definitely submitted in favor of the defendant.

It is urged that the court excluded certain competent evidence offered by plaintiff. Having in mind that plaintiff's right of recovery is dependent upon proof of negligence we shall consider whether any of the excluded evidence had any bearing upon that issue as it was submitted to the jury.

The court struck out testimony of the witness Fisher to the effect that the work was being done by Tracy in the usual and customary way when the accident happened. This testimony had no bearing upon the question as to whether the defendant moved the cars while decedent was between them. It might have been competent to show that Tracy was not guilty of contributory negligence, but that, as we have already observed, could go only to the question of the measure of damages and that becomes quite immaterial in view of the finding of the jury that there was no negligence on behalf of defendant.

It is next urged that the court erred in striking out Fisher's testimony to the effect that Tracy was closing both angle cocks between the cars. It appeared from Fisher's own testimony that he could not see Tracy, but quite aside from that, the action of Tracy in this regard did not tend to prove or disprove negligence on behalf of the defendant. The question as to whether Tracy, at the time of receiving his injuries, was doing the work the way he had been doing it for some time in the past again went only to the question of his contributory negligence. Fisher was not permitted to answer whether in his judgment it was necessary to close the angle cocks. The question was objected to because it called for the conclusion of the witness, but regardless of the grounds of the objection the question did not go to any act of negligence on behalf of the defendant. The same is true as to the question as to whether or not it was the duty of the foreman to close the angle cocks, and also whether

640

the angle cock farthest away from the switchman could be reached by one remaining outside of the rails.

Without further detail, we have carefully examined all the evidence proffered and rejected, or received and stricken, and are of the view that none of it had any bearing upon the question which the jury was instructed first to determine; to wit, whether the defendant was guilty of negligence in moving its cars while decedent was between two of them. The jury having determined this issue in favor of defendant, then clearly the question of decedent's contributory negligence became immaterial, as did also any testimony going to the extent of decedent's injuries or the amount of damages recoverable. We need not therefore determine whether the court may in some instances have committed technical error in excluding any of this evidence as such error could not, in view of the record, have been prejudicial.

■ ■ It is contended that the court erred in instructing the jury that damages for pain and suffering from head injury were not recoverable unless the injury caused death. The objection interposed to this instruction was that it was not in accordance with the issues because "the issue is one of death caused by the original accident on September 22, 1942, where plaintiff contends the decedent received an injury to his head," and that the instruction tended "to split up the cause of action and to confuse the minds of the jury." In the objection it is said: "This instruction violates the Federal statute which says that suits of this character shall be brought for the total damages that the beneficiaries, under the Act, have sustained; furthermore, only the plaintiff could possibly have a right to submit separately the matter of damages between the deceased's injury and his death and the amount of damages that the plaintiff sustained * * *."

Clearly this went only to the measure of damages and if erroneous could not have been prejudicial as the jury found there was no liability.

■ It remains to consider plaintiff's contention that the trial court abused its discretion in excluding evidence offered in

support of her second motion for new trial on the ground of alleged newly discovered evidence. The alleged newly discovered evidence was that the jury which tried the case had not been legally selected. The motion was filed August 1, 1946, more than a year subsequent to the verdict and judgment, and after a prior motion for new trial had been overruled. It was claimed that the petit jury had been illegally selected. The alleged irregularity in selecting the panel of petit jurors was that by agreement between the clerk and the jury commissioner the clerk selected all names for the jury panel outside of the limits of the city and county of St. Louis, while the jury commissioner selected all names for the panel within the city and county of St. Louis. There was no allegation that the names so selected were not all qualified jurors. At the hearing of the motion defendant objected to the introduction of evidence on the ground that the motion was not based upon newly discovered evidence in that the grounds stated in the motion showed conclusively that it was not so based but was based upon claimed irregularities in the manner of selecting the trial jury, and not being a motion on the ground of newly discovered evidence it was not timely. It was also objected that the motion was not timely because it had not been raised before verdict and judgment had been entered, and the motion for a new trial on such ground would have to be filed within ten days after judgment under Rule 59(b), Federal Rules of Civil Procedure, 28 U.S.C.A. The court sustained these objections.

Newly discovered evidence must be competent and relevant to the issues tried, and of such weight and nature that if added to the evidence already in the case would probably change the result of the trial. Kithcart v. Metropolitan Life Ins. Co., 8 Cir., 119 F.2d 497; Johnson v. United States, 8 Cir., 32 F.2d 127; United States v. Johnson, 7 Cir., 142 F.2d 588. The allegations contained in the motion conclusively showed that there was no newly discovered evidence so far as the issues in the case were concerned. The motion alleged irregularities on the part of certain officers in selecting the jury. Such a motion should

be made before or at the time of trial but if not so made, certainly within ten days after the entry of judgment. Union Electric Light & Power Co. v. Snyder Estate Co., 8 Cir., 65 F.2d 297; Carruthers v. Reed, 8 Cir., 102 F.2d 933; Wright v. United States, 8 Cir., 165 F.2d 405; United States, v. Meyer, 7 Cir., 113 F.2d 387; Higgins v. United States, 81 U.S.App.D.C. 371, 160 F.2d 222.

In Union Electric Light & Power Co. v. Snyder Estate Co., supra [8 Cir., 65 F.2d 301], it is said: "It was the duty of counsel to ascertain by proper examination at the time the jury was impaneled, the existence of any ground of objection to the jurors, and failing so to do, he cannot thereafter raise any objection which might have been discovered and seasonably presented to the trial court."

In Carruthers v. Reed, supra [8 Cir., 102 F.2d 939], in an opinion by Judge Woodrough, it is said: "The right to challenge the panel is a right that may be waived and is waived if not seasonably presented. Such rights, if waived during trial, may not be availed of by attack, in a collateral proceeding."

In Wright v. United States, supra, we held that the right to challenge the panel is waived if not seasonably presented, and if waived during trial may not later be availed of.

In United States v. Meyer, supra [7 Cir., 113 F.2d 396], the court considered the question of alleged error in the manner of selecting the jury. During the course of the opinion it is said: "A complete answer to the defendants' position with regard to the venire exists in the well known rule that errors in the manner of drawing a jury must be presented by challenge to the array before, or at the latest, at the time of the examination of the jury."

In Higgins v. United States, supra, [81 U.S.App.D.C. 371, 160 F.2d 223] it is said: "The first of these is that the jury was not properly constituted in that it did not represent a proper 'cross-section' of the community, as was held necessary in the very recent case of Thiel v. Southern Pac. Co. [328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181, 166 A.L.R. 1412]. It is enough, perhaps, to say that there was no challenge of the

jury on this ground at the trial and no motion to strike the panel."

We are of the view that the allegations and grounds stated in the motion, even if proved, would, in view of the tardiness of their presentation, have been entirely insufficient to warrant the granting of a new trial, and hence, there was no abuse of discretion in declining to hear testimony in support of such allegations. The judgment appealed from is therefore affirmed.