[Civ. No. 8734.   Third Dist.   Nov. 5, 1956.]

ORVILLE SPRINGER, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

Devlin, Diepenbrock & Wulff for Appellant.

Thomas C. Perkins for Respondent.

PEEK, J.—This is an appeal by defendant from certain orders and the judgment rendered at the conclusion of the trial of an action brought by plaintiff under the provisions of the Federal Employers' Liability Act. (45 U.S.C.A., § 51 et seq.) The action arose out of an injury suffered by plaintiff when he fell from a ladder while doing repair work on a box car in defendant's Sacramento shops. Following a verdict in plaintiff's favor, defendant moved for a judgment notwithstanding the verdict, which was denied. After the entry of judgment, defendant renewed its motion for judgment notwithstanding the verdict and moved for a new trial. Both motions were denied and defendant appealed. We have concluded the trial court was correct, and the judgment must be sustained.

Plaintiff's complaint contained three causes of action: First, that ". . . plaintiff was required to and was engaged in standing on a ladder riveting sheets on defendant's box car; that due to and as a direct and proximate result of negligence of defendant in said matters plaintiff was caused to fall . . . ;"

second, that ". . . at said time and place defendant was negligent in failing to provide plaintiff with safe appliances and equipment with which to perform his work and duties . . . ;" and third, that ". . . at said time and place defendant negligently failed to provide plaintiff a safe place in which to work. . . ." As to each count, plaintiff alleged general damages as well as special damages for loss of earnings and for future medical expense. The amounts of these items were left blank. At the time of trial plaintiff inserted the amount of special damages claimed for lost earnings, but in both the body of the complaint and in the prayer, he left blank the amount sought for future medical expense. Defendant's answer denied generally the allegations of the complaint.

On appeal defendant contends (1) that there was no substantial evidence of negligence under any of the three causes of action set forth; (2) that at least one of the three causes was improperly submitted to the jury; and (3) that it was prejudicially improper for the court to instruct the jury that it could return a verdict including damages for future medical expense.

The record, viewed in the light most favorable to plaintiff, discloses that for some days prior to the accident plaintiff, with three other employees, had been engaged in repairing one of defendant's box cars, and in particular in riveting steel side plates, 42 to 45 inches wide, on said car. The flooring of the car at the end where plaintiff was working had been removed. In order to carry out his duties as a riveter, he had placed two "grain boards" lengthwise on the exposed steel frame of the car. These boards were approximately seven feet long and from 18 to 24 inches wide. In order to reach the top row of rivets on the steel plate which was then being put in place, plaintiff had placed a ladder on the two grain boards. At the base of the ladder there were prongs to hold it securely on the boards. The crew with which plaintiff was working consisted of one man to heat the rivets, another one to place the rivets in the plates and a third man to hold the rivets in place while plaintiff riveted them from the inside of the car. Plaintiff, as the riveter, worked alone in the car, and the remaining members of the crew worked on the outside. The speed at which plaintiff worked was controlled by the speed at which the rivets were inserted from the outside. By placing the grain boards lengthwise of the car it was easier for him to keep pace with the crew since it was necessary to move the ladder only as he progressed

along the top row of rivets, whereas had the grain boards been placed crosswise, it would have been necessary to move them as well as the ladder each time his position changed. Plaintiff was approximately 5 feet, 10 inches tall and weighed 210 to 215 pounds. At the time of the accident he was using a riveting gun weighing 45 to 50 pounds, to which was attached a 50-foot hose of undisclosed weight. Plaintiff had worked continually as a riveter for approximately five or six months and for nearly a year before had worked intermittently in this same capacity. He had not been instructed how to rivet or how to place the grain boards in any particular fashion while riveting from the inside of a car. One Gorman who bucked the rivets from the outside of the car and alternated with plaintiff in that job and in driving the rivets, testified he likewise had received no instruction in these matters. However, at the time of his employment plaintiff had received and read a pamphlet entitled, ''Safe Working Methods for the Guidance of Employees in Maintenance and Equipment Department.'' It was therein set forth in part that ladders should be securely placed to prevent slipping or falling, and when used on concrete, metal, tile or other hard surfaces, the same should be secured by chains or ropes to prevent slipping and should not be placed in any precarious position when used. One of defendant's witnesses testified that there were times when a ''standee'' could not be used, and when such an occasion arose another employee would hold the ladder.

Both plaintiff and Gorman testified that for at least a week prior to the accident plaintiff had riveted from a ladder set on grain boards, placed lengthwise on the underframe; that it was necessary to follow this practice in order to reach the rivets along the top of the plate and to keep pace with other members of the gang outside the car. James Kirby, who had left defendant's employ approximately nine months before the accident, and who had been a welder for defendant, testified that in defendant's shop he had observed riveting from a ladder placed on grain boards lengthwise in a car. Frank Miller, the foreman directly in charge of plaintiff's crew, testified in his deposition that it would be necessary to use a ladder to drive the top rivets. At the trial, when his attention was directed to his former testimony he said, ''Yes, he was working in an unsafe manner. If I replied in that way I made that statement as referring to our safety rules.'' Another member of plaintiff's riveting gang at the time of the accident, Albert Sylve, testified that in order to drive certain

rivets, a ladder was necessary. The record further developed that it was the duty of the foreman, Miller, to see that the riveting job was properly set up. He testified that three weeks prior to the accident he had observed plaintiff riveting from a ladder and had requested him to get a "standee." Miller's testimony in this regard was corroborated by the witness Goodnight, a lead workman. A standee as referred to by Miller is a four-legged wooden platform approximately 8 feet long by 20 inches wide with legs tapering to approximately a 3-foot spread at the bottom, and is from 4 to 6 feet high. The foreman testified further that on the morning of the accident he saw plaintiff two or three times prior to the injury and the last occasion was approximately 15 minutes to one-half hour before the accident. He observed the two grain boards placed lengthwise on the underframe but he did not see any standee in the car. A further witness for defendant, Harry J. Hitke, general foreman, together with Miller testified that the custom and practice in defendant's shop at the time of the accident was to rivet from standees and never from ladders.

In support of its first contention, that there was no substantial evidence of any negligence on its part under any cause of action which was a proximate cause of plaintiff's injury, defendant argues that the plaintiff was not required to use a ladder for riveting; that it had provided plaintiff with reasonably safe appliances and equipment; and that defendant is not liable for the dangers inherent in the repair of a box car or resulting from plaintiff's arrangement of his equipment; and that plaintiff's conduct was the sole and proximate cause of the injury.

Despite the conflicts, it cannot be said that there was not sufficiently substantial evidence on each of the three causes to justify submitting each to the jury. Necessarily, therefore, this court cannot hold as a matter of law that the defendant railroad had reasonably complied with all of its duties in providing plaintiff with safe appliances and equipment and with a safe place in which to work, or that the injuries were caused solely by plaintiff's conduct. The province of this court in reviewing the evidence on appeal is the same as under the federal rule (*Waddell* v. *Chicago & E.I.R. Co.*, 142 F.2d 309), and while it is true that the act does not make the employer the insurer of the safety of his employees, nevertheless he is liable for his negligence which must be in whole or in part the cause of the injury. (*Ellis*

v. *Union Pac. R. Co.*, 329 U.S. 649 [67 S.Ct. 598, 91 L.Ed. 572].) ▮ Under this rule the contributory negligence of an employee is merely a ground for diminishing the amount of recovery. Hence, even assuming that the acts of plaintiff contributed to the accident, unless it could be said as a matter of law that such acts were the sole and proximate cause of his injuries, his contributory negligence would not bar a recovery. ▮ But as we have previously noted, there was ample evidence from which the jury could infer that plaintiff's duties compelled him to use the equipment as he did, and that the defendant, having knowledge of the conditions existing where plaintiff was working, did not exercise due care under the circumstances.

What has heretofore been said concerning defendant's first contention is likewise decisive of its second. It is defendant's argument that this case must be reversed because ". . . at least one of the several counts was improperly submitted to the jury." The essence of defendant's contention in this regard as stated is: "Assuming that it [this court] found only one cause of action unsubstantiated, the controlling federal rule requires a reversal." Whether we agree with the cases cited and relied upon by defendant becomes immaterial since, as we have heretofore concluded, each cause was amply supported, and hence any further discussion concerning this contention would be wholly academic in that it would of necessity be predicated upon an assumption not borne out by the record that at least one cause was not substantiated by the evidence.

It is defendant's final contention that "it was prejudically improper to instruct that the jury could return a verdict including damages for future medical expenses, because they were misleadingly pleaded, not proved as to necessity or amount, and there was no trial of the issue." Again we find no error in this regard. It is true that the complaint provided generally for the recovery of medical expense but left a blank for the insertion of the amount thereof, as well as a blank for the amount of alleged earnings lost. At the time of trial plaintiff inserted the amount of special damages claimed for loss of earnings, but left blank both in the body of the complaint and in the prayer the amount of alleged future expense. At the conclusion of the trial the court instructed the jury in part as follows:

". . . [Y]ou shall determine each of the items of claimed detriment which I now am about to mention, *provided* that

you find it to have been suffered by him, and as a proximate result of the concurring negligence of the plaintiff and the defendant.

"The reasonable value, *not exceeding the cost* to said plaintiff, of the examinations, attention and care by physicians and surgeons reasonably certain to be required, and to be given in his future treatment, *if any*; and including in such care x-ray pictures, *if any*, reasonably necessary.

"The reasonable value not exceeding the cost to said plaintiff of the services of nurses, attendants and hospital accommodations, and care, reasonably certain to be required or to be given in his future treatment, *if any*." (Emphasis added.)

At the outset it is difficult to understand why this particular form of pleading was followed by plaintiff since, if future medical expense was anticipated, the exact amount thereof could not have been known beforehand. However, as previously noted, plaintiff's complaint alleged that further treatment would be necessary in an amount not then ascertainable and that when it was so ascertained, such amount would be inserted in the complaint. The prayer also left a blank for insertion of such amount. Defendant did not question the propriety of such allegations but merely answered denying the same and praying that plaintiff take nothing. On the issues so joined, the cause proceeded to trial. During the course of the examination of an orthopedic surgeon called by plaintiff, it was disclosed that plaintiff's condition might become worse and that traumatic arthritis might develop. The doctor called by defendant testified that plaintiff might develop an ankylosis of the knee joint. No question was raised by defendant when either of the doctors called so testified.

Thus, since it appears that from the outset defendant was advised that plaintiff would claim future damages as a proximate result of his injury and since evidence was introduced in support thereof, it cannot now for the first time on appeal complain that such evidence lacks the necessary degree of certainty. (*McDonald* v. *Standard Gas Engine Co.*, 8 Cal.App.2d 464 [47 P.2d 777].) ". . . [N]one of the evidence quoted was objected to. No ruling was asked of or made by the trial court. Defendants introduced no evidence rebutting the above excerpts. Under these circumstances we think the provisions of section 3283 of the Civil Code were complied with." (*McDonald* v. *Standard Gas Engine Co.*, *supra*, page 477.) This rule has also been fol-

lowed in the federal courts. (See *Reading Co.* v. *Geary,* 47 F.2d 142 [79 A.L.R. 226].)

The judgment and orders are affirmed.

Van Dyke, P. J., and Schottky, J., concurred.