[Civ. No. 10662. Third Dist. Dec. 15, 1964.]

LENA K. ANDERSON, as Administratrix, etc., Plaintiff and
 Appellant, v. SOUTHERN PACIFIC COMPANY, De-
 fendant and Respondent.

234

236

Perkins, Carr & Anderson and Frances N. Carr for Plaintiff and Appellant.

Devlin, Diepenbrock, Wulff & Plant and Forrest A. Plant for Defendant and Respondent.

VAN DYKE, J.*—This is an appeal by plaintiff from an adverse judgment entered upon a jury verdict for defendant in a personal injury action under the Federal Employers' Liability Act. (45 U.S.C.A., § 51 et seq.) By his complaint plaintiff sought damages for a progressive disabling disease of the lungs and bronchi, known as pulmonary emphysema,

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

claimed by plaintiff to be industrial in origin and the result of exposure to various deleterious dusts, fumes and vapors inhaled by him during his work as a painter in defendant's railroad shops in Sacramento over a period of approximately 20 years. The complaint filed June 16, 1961, charges that defendant negligently exposed plaintiff to such deleterious substances, commencing in 1941; that the effects of such exposure were accumulative and resulted in plaintiff's being work-disabled from the middle of June 1959 to November 2, 1959, and from time to time thereafter until January 27, 1961, when he became permanently disabled. By answer defendant entered a general denial (the complaint was unverified) and set up affirmative defenses of contributory negligence and limitation of action. During his tenure of service with defendant, plaintiff, in the renovation of passenger and freight railroad cars, engaged in various activities of sandblasting, spray painting, stenciling by means of spray painting, and removing paint and varnish from passenger-car furniture and equipment. Negligence was predicated primarily on the failure of defendant to provide safe and proper respiratory equipment to protect the workmen from inhalation of contaminants produced from such work and failure to provide adequate ventilation to clear the working areas of atmospheric pollution. The case was tried to a jury which returned a general verdict for defendant. Motion for a new trial was denied and plaintiff appealed. Plaintiff died after the appeal was taken and his wife, Lena K. Anderson, as administratrix of his estate, was substituted as appellant.

Herein appellant claims error in instructions given by the court concerning the defense based on the statute of limitations, in the giving of various other instructions, which we will discuss later, and in the exclusion of evidence.

On the subject of limitation of action, the court modified, and gave as so modified, an instruction requested by plaintiff. It read as follows: ''In an action where the plaintiff claims, as a proximate result of defendant's negligence, to be suffering from an occupational disease which had a gradual onset over a long period of time as a proximate result of continued exposure to deleterious materials in his employment, a different rule applies in determining the time when the plaintiff sustained injury, if any, so as to commence the running of the statute of limitations, than applies in the usual civil action for injury to one's person.

''In such usual action for injury to one's person there is

generally a single act or episode of alleged negligent conduct proximately resulting in immediate injury to the plaintiff's person, and the statute of limitations commences to run at the particular date or point of time of such alleged negligent act or episode.

"But in an action such as we are now trying, where the plaintiff claims injury as a proximate result of continued exposure over a period of time rather than at a particular point of time, the cause of action does not accrue and the statute of limitations thereon does not commence to run until such time as the accumulated effects of the deleterious materials have manifested themselves, that is to say, until such time as plaintiff knows, or in the exercise of ordinary care should have known that he has suffered an appreciable occupational injury."

As requested by plaintiff the latter part of this instruction read: "The Statute of Limitations thereon does not commence to run until such time as the accumulated effects of the deleterious materials have *disabled plaintiff from doing his work,* or until such time as plaintiff knows, or in the exercise of ordinary care should have known, that he has *contracted a disease proximately caused by exposure by such deleterious materials which is reasonably certain to disable him from doing his work in the future.*" (Italics supplied.) As modified by the court the instruction eliminated disablement as a specific point of time which the jury could find marked the running of the statute and substituted the more general term "manifested themselves," then defined manifestation as being a condition known to plaintiff or as to which plaintiff was chargeable with knowledge. Both as proposed and as modified the instruction told the jury that plaintiff could be charged with knowledge of occupational injury even though he had no knowledge in fact, if they found that in the exercise of ordinary care he should have known.

At defendant's request the court further instructed the jury as follows: "It is not necessary for a cause of action to accrue under the Federal Employers' Liability Act that the plaintiff be aware of the exact cause of his symptoms."

"In a case such as this it is not necessary in order for a cause of action to accrue that the effects of the substances in question have progressed to the point that plaintiff is disabled from carrying out the duties of a painter."

"Inasmuch as the cause of action accrues in a case such as this when the claimed accumulated physical effects of the

substances in question manifest themselves to plaintiff, if you find that prior to June 16, 1958, the claimed accumulated effects of the substances in question were manifest to plaintiff, then you must find for the defendant as to any claimed negligence of defendant occurring before that date, inasmuch as the complaint was filed herein on June 16, 1961.''

We think all the foregoing instructions were erroneous as being instructions given upon a factual issue that did not exist. Stated another way, we think that as a matter of law the defendant had not made out the affirmative defense of limitation of action.

The applicable statute of limitations in an action under the Federal Employers' Liability Act (45 U.S.C.A. § 56) reads as follows: ''No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued.''

In this case where there was no traumatic injury which could serve to fix the time when the cause of action accrued, where the alleged injury was the result of the slowly accumulative effect of the inhalation of deleterious substances, the record before us, factually considered, would not sustain a finding by the jury that plaintiff's cause of action had accrued at any point of time anterior to three years before June 16, 1961, on which day he commenced his action. (*Urie* v. *Thompson,* 337 U.S. 163 [69 S.Ct. 1918, 93 L.Ed. 1282, 11 A.L.R.2d 252] ; *Coots* v. *Southern Pac. Co.,* 49 Cal.2d 805 [322 P.2d 460] ; *Young* v. *Clinchfield Railroad Co.,* 288 F.2d 499; *Bradt* v. *United States,* 221 F.2d 325.)

Although the evidence as to whether or not plaintiff's condition was job-connected was the subject of sharp conflict, it could not be disputed that when plaintiff began this action he was suffering from pulmonary emphysema to a point where he was totally disabled.

The record is such that aside from the issue of limitation plaintiff was entitled to go to the jury upon the issue of respondent's liability under the federal act.

Concerning the nature, cause and progress of pulmonary emphysema, each party offered expert testimony by phsyicians trained and skilled in the field of pulmonary diseases. Doctor Furlong, called for defendant, stated that pulmonary emphysema is a disease of unknown cause, although there are numerous theories among the medical profession as to its cause; that autopsies of persons who have died from emphysema show a degeneration of the elastic tissues supporting the

finer structures (alveoli) of the lungs, the end result of which is emphysema. It was Doctor Furlong's opinion that this degeneration was the cause of emphysema, whatever the cause of the degeneration might be. He stated that one theory acceptable to many physicians is that this degeneration of the elastic tissues is related to bronchial infection; that many patients with emphysema have a long history of bronchial irritation; but the witness discounted this theory, saying that respiratory infections primarily involve the larger bronchial tubes and do not extend to the tiniest branches of the ultimate air sacs. The witness opined that any particulate matter inhaled would be precluded from reaching the deeper recesses of the lungs by the cilia found in the nose, the trachea, and the bronchial tubes. Other theories expounded and discounted by Doctor Furlong were that a general degeneration of all supportive tissues throughout the body occurs; that the condition is hereditary; that a disturbance in the vascular system is responsible; that irritants in the atmosphere cause it; that infectious bronchitis is a cause.

Doctor Webster testified as an expert witness produced by plaintiff. It was his opinion that inhalation of irritants, with resulting infection in the bronchi, is an effective cause of emphysema; that the disease occurs because the irritants cause swelling and thickening of the mucous membrane lining the bronchi, with a resulting increase in the secretions therein; that the secretions present obstructions to the passage of air through the bronchi; that the air thereby becomes trapped in the air sacs, which will, with sufficient excess air, blow up much like a balloon and break. This in turn impairs the elasticity of the alveoli and these areas are unable to contract sufficiently to squeeze air out of the lungs; that a second factor is that the secretions accumulate, the person coughs to get rid of this accumulation, and the pressure of the constant coughing also causes a breakdown in the alveoli. He said that in his opinion the bronchial infection produced is a sort of self-perpetuating circle in which the secretions provide food for the organisms normally found in the bronchial tree; that they overgrow and produce infection; that the infection produces more secretion, more food and more infection; and that as air sac tissue sustains more damage, the emphysema sufferer's ability to expel air becomes progressively impaired, the chest becomes overdistended, and the cough is less effective to eliminate the secretions. He said that inhalation of sand and dust from sandblasting done by appellant would have

an effect in causing his existing condition, though here the amount of damage done by the initial exposure, which was of limited duration, would be insignificant if no further damage had been done. That emphysema is a cumulative thing and that it is the continued exposure to irritants which causes emphysema to a severe degree.

Doctor Furlong said that there was no evidence coming to his attention that plaintiff's existing disability resulted from the occupational exposure described by him. He discounted sandblasting activities as a cause because of the brevity of such activities during the entire time of plaintiff's employment and thought it had no significant effect in the production of his existing emphysema. He said that inhalation of dust, paint, vapors and other irritants would cause irritation, constriction and increased mucous flow into the bronchial tubes in one who already had emphysema, but this would be only a temporary aggravation and not productive of the degenerative condition of the alveoli found in emphysema.

Both witnesses testified that cigarette smoking, while not a primary cause of emphysema, aggravates an already existing emphysema condition; that a high percentage of persons with severe emphysema show a history of heavy smoking. There was evidence that the plaintiff herein had a history of moderate to heavy smoking. Doctor Webster considered that carbon tetrachloride, toluene, xylene, acetone, petroleum naphtha, benzine, methylene chloride and chloroform, ingredients found in the paints, thinners, paint removers and other material used by plaintiff in his work as a painter, were all more irritating to the lungs than cigarette smoke.

Doctor Furlong testified further that his examination of plaintiff, his knowledge of the subject of pulmonary emphysema, and particularly his readings in regard to paint sprayers having a particularly high incidence of emphysema, all led him to discount plaintiff's occupation as being a probable cause of his condition. He said that he had known cases of emphysema among physicians, lawyers and other people who had never had any occupation involving dust exposure; and while his opinion was that plaintiff was suffering from chronic pulmonary emphysema, the disease had been slowly progressing over a long period of time and there was no evidence that his present disability resulted from occupational exposure. He further said that considering plaintiff's shortness of breath, his coughing (going back as far as 1942) and his smoking habit, plaintiff's disease followed

the normal pattern regardless of occupation; that because of the reserve capacity of the lungs, patients are unaware of disability until a good deal of damage is done, and when these patients finally seek medical attention the disease is often far advanced; that in questioning them the usual history obtained is the history similar to that obtained from Mr. Anderson of chronic cough, morning expectoration, some shortness of breath, slowly progressive, finally becoming serious enough to cause him to seek medical help. "So his [Anderson's] history is the usual history obtained from a patient who has this disease from whatever cause. . . . Regardless of their occupation . . . ." Doctor Furlong said further that pulmonary emphysema was not even the commonest cause of a complaint of shortness of breath; that shortness of breath is a very common complaint which brings the patient to the physician, and it may result from such diverse causes as heart disease or anemia, where the blood level of the red cells is so low that the body cannot transport oxygen; from a great many different lung diseases; from anything which limited the amount of lung tissue; and therefore any disease affecting the lung might cause shortness of breath.

Plaintiff's medical history, as reflected in the hospital records of respondent company, discloses the following: Plaintiff was born November 1, 1904, with no family background of respiratory disease. He had polio as a small child which affected his right leg but did not impair his ability to work. He had influenza during the 1918 epidemic and pneumonia in 1920. In 1939 he was treated for stomach ulcers and again in 1949. On October 6, 1949, he had complaints of tiring easily and had a letter from the tuberculosis association reporting a questionable chest film. During his 1949 treatment X-rays were taken by respondent's physician at the hospital and his chest was fluoroscoped. The doctor found a healed duodenal ulcer but nothing wrong with the heart or lungs. The first indication of respiratory pathology in the hospital records appears December 18, 1956, when plaintiff, while being treated as an outpatient in Sacramento, had a cold and was referred to the Southern Pacific Hospital in San Francisco for a medical checkup. The history showed his complaints then were chronic cough, stomach trouble and nondisabling shortness of breath. Examination, as shown by the records, disclosed that he was not malnourished; that his lungs had good expansion; that no rales were noted; that blood tests were normal. The X-rays then taken were in

evidence at the trial herein, and according to Doctor Webster, they revealed changes of pulmonary emphysema; and at the hospital at the time the X-rays were taken the physicians noted on the records, "moderate degree of emphysema throughout"; but the records do not show that plaintiff was advised of this condition. The dismissal diagnosis made on December 23, 1956, was "duodenitis" and "chronic duodenal ulcer . . . . No other active pathology noted." The only treatment afforded was dietary for the ulcer condition. Plaintiff had a history of shortness of breath, occasioned from time to time; he became concerned over it in 1954-1955 and requested a change of jobs from the exterior, or outside gang, to an interior gang, because he felt weak and was short of breath. He testified that in 1956 he felt he was going downhill, wanted to find out what was wrong with him and went to the hospital. We have just given the history of this hospitalization and the diagnosis upon discharge. Plaintiff testified he had never been told he had pulmonary emphysema until 1959, and the record is devoid of proof that he was told or had known the fact prior to that date. In 1959 he went to the respondent company's general hospital. The record shows his chief complaint was shortness of breath during the past year, becoming quite progressive within the last two months. An electro-cardiogram revealed a myocardial infarct, age undetermined, which Doctor Webster stated was, in his opinion, related to his pulmonary emphysema, an opinion which differed from that of Doctor Furlong. The chest X-rays then taken revealed advanced emphysema and plaintiff was told of that fact. The diagnosis was advanced pulmonary emphysema associated with moderate bronchitis and myocardial infarction. He was discharged from the hospital October 6, 1959, with a return to duty date of November 2, 1959.

We are satisfied that the record contains nothing from which the jury could find as a fact that prior to June 16, 1958, plaintiff either knew, or in the exercise of ordinary care should have known, that he was suffering from pulmonary emphysema, or any disease occupationally contracted and either disabling or probably disabling. The situation here is well described in *Bradt* v. *United States, supra* (221 F.2d 325), a case of disabling pulmonary tuberculosis. The court said (p. 325): ". . . Respondent maintains that the vague symptoms which the libelant had while he was on board the Pittston Victory were sufficient to put him on notice of his

illness so that his claim is now barred. Judge Bruchhausen rejected this argument, and so do we. The seaman cannot and should not be expected to make a self-diagnosis of a progressive disease like tuberculosis. We hold that the statute did not here begin to run until the libelant was informed of his illness by a physician. See *Urie* v. *Thompson,* 337 U.S. 163 [69 S.Ct. 1018, 93 L.Ed. 1282, 11 A.L.R.2d 252]."

*Young* v. *Clinchfield Railroad Co., supra* (288 F.2d 499) was a silicosis case. The court said at pages 502-503 : ". . . The parties disagree over the meaning of the word 'accrued' as it is used in this enactment. The defendant company's position is that as a matter of law the cause of action 'accrued' no later than the date on which the plaintiff terminated his employment in July, 1954, and that accordingly, as the present action was not filed until April 23, 1958, it is barred by limitations.

"Underlying this argument is the theory that a cause of action accrues the moment the injury is *inflicted.* The defendant is willing to recognize that when silicosis is the claimed injury, its onset is so gradual that it cannot be determined with certainty when the injury happened. Nevertheless, the defendant maintains that any injury for which it might have been liable was caused, of necessity, no later than July, 1954. From this the defendant would have us conclude that the cause of action must have accrued by that date and should be barred by limitations. We think that this contention is unsound.

"Many personal injuries are of such a character that the symptoms become immediately detectable. This is commonly the case when one suffers burns, cuts, broken bones, etc. Almost from the moment that such injury is inflicted the victim is aware of his condition and the wrongful act which caused it. While he may not always know the extent of his disability, he is in no doubt that he was injured. Where such knowledge exists upon the occurrence of the injury we have an immediate accrual of the cause of action and the statutory period begins at that time.

"On the other hand, other types of injuries are not immediately detectable. Since the effects are usually long delayed, the victim does not know that he has been injured till he observes definite symptoms referable to the injury. Moreover, when the injury becomes apparent it may be totally impossible to determine precisely when it was inflicted. Silicosis falls in this latter category, and characteristically its

onset is insidious and does not come 'with the suddenness of lightning,' *Urie* v. *Thompson,* 1949, 337 U.S. 163. . . . A rule of law that focuses on the occurrence of the wrongful act in determining when the cause accrued is totally inapplicable in such a case.''

The court then quoted from *Urie* that portion wherein the Supreme Court said that to adopt the defendant company's reasoning in that case would mean ''. . . that at some past moment in time, unknown and inherently unknowable even in retrospect, Urie was charged with knowledge of the slow and tragic disintegration of his lungs; under this view Urie's failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness would constitute waiver of his right to compensation at the ultimate day of discovery and disability.' . . .'' (P. 502.) The circuit court continued: ''Accordingly, the Court [Supreme Court] held that Urie's cause of action accrued only after his condition had been diagnosed, for only then did he have notice that his legal rights had been invaded.

''The *Urie* case unquestionably demonstrates the Court's view that when the nature of the injury is such that it does not manifest itself immediately, the determination of when the cause of action accrues does not depend on when the injury was inflicted. To the contrary the cause of action accrues only when the plaintiff has reason to know he has been injured. Generally this will be when his condition is diagnosed, unless it is shown that the plaintiff 'should have known' at an earlier date that he was injured. . . . It follows that this is so even though the condition was not discovered by the plaintiff until long after the termination of the employment. It is to be noted that the basis of the Supreme Court's decision in Urie was not that the plaintiff filed his suit within three years after leaving his employment, but within three years after his condition was diagnosed as silicosis.''

The circuit court went on to point out that the employer was contending that even if it could not be said as a matter of law that the cause of action of plaintiff therein accrued not later than his last day of employment, nevertheless, there was evidence that created a jury issue as to when it did accrue. Said the court: ''. . . It argues that, although a medical diagnosis of silicosis was not made until August, 1956, less than three years before suit was filed, there was evidence

tending to show that he should have known his condition earlier. It [employer] relies on the fact that he quit his job in the summer of 1954, partly at least because of shortness of breath. The defendant reasons that as the plaintiff came from a mining region where silicosis is fairly common, he is to be charged with knowing that shortness of breath is one of the symptoms of this disease, and hence Young had reason to know as early as 1954 that he had contracted silicosis.

"The testimony furnishes no sufficient predicate for this line of reasoning in order to raise a significant issue. Young had been complaining of a number of ailments before terminating his employment in July, 1954. He had kidney trouble as well as shortness of breath, and had but recently undergone surgery for prostatitis. With a complex of symptoms this ignorant layman could not in fairness be charged with a recognition of his silicosis because one of his symptoms was shortness of breath. This is not a specific symptom of silicosis; it is commonly indicative of many other diseases as well. Failure to associate it with silicosis at this early date cannot be treated as fault or neglect or a circumstance sufficient to create a factual issue. Residence in the mining country of West Virginia does not invest one with the expert knowledge or diagnostic skill sought to be attributed to the plaintiff. The sought-for inference could rest on nothing more than speculation." The court held, as a matter of law, that the defense of the statute of limitations had not been made out.

On the record before us we see no escape from the reasoning of the circuit court in *Young* v. *Clinchfield, supra,* and therefore hold that respondent herein had failed as a matter of law to make out its defense of the statute of limitations and that the issue should not have been submitted to the jury. Emphysema is more insidious than either tuberculosis or silicosis. Both expert witnesses agreed that whatever causes degeneration of the expulsive capacity of the lungs the end result is simply dead air in the lungs and lessened useful lung capacity. But due to the reserve capacity of the lungs no disability occurs until the damage is far advanced. Even then the symptoms are common to many other diseases and do not point specifically to emphysema. Skilled diagnosis appears to be the only sure means to knowledge—and even then the layman may not even suspect that his injury is job-connected. Respondent's expert was convinced, after study, that it was not, and plaintiff's expert was unable to go further

than a probability. The disease itself gives no specific warning of its presence, and, as Doctor Furlong said, generally patients do not consult a doctor until it is far advanced. The burden was on respondent to maintain its affirmative defense of limitation and it failed to do so. It was error to submit the limitation of action issue to the jury.

Since there was sufficient evidence to go to the jury on the issue of liability, we will now discuss appellant's claims of error in giving certain instructions other than those referable to limitation of action.

At respondent's request the court instructed the jury: "If you find from the evidence in this case that the plaintiff was aware that the conditions at the job or jobs which he now complains of were a possible cause of aggravation of his illness, if any, and that he failed to exercise reasonable care by continuing to work at such jobs without bringing the matter to the attention of his supervisors, then you may find that Mr. Anderson was himself guilty of negligence."

"If you find from the evidence in this case that the plaintiff was aware that exposure to certain paints, solvents and other materials used by the defendant was a possible source of aggravation of his lung condition, but nevertheless failed to exercise reasonable care by continuing to work at the jobs in which he would come in contact with such materials, then you may find that Mr. Anderson was himself guilty of negligence."

Appellant makes a number of complaints concerning these instructions, but we think that one only need be specially discussed. That claim is that the instructions are in fact instructions on the assumption of risk. We do not agree. They are cast in the language of negligence instructions, and the court specifically told the jury that under the Federal Employers' Liability Act the injured employee of a railroad company does not assume any of the risks of his employment in any case where his injury results in whole or in part from negligence on the part of the railroad company or of its officers, agents or employees. Appellant's further complaints as to these instructions on contributory negligence need not be specifically discussed, we think, for the reason that the jury returned a general verdict in favor of defendant on the issue of liability. As said in *Rogers* v. *Southern Pac. Co.*, 172 Cal.App.2d 493, 497 [342 P.2d 258]: "Several of the claims of error apply only to the defense of contributory negligence. The jury was properly instructed that under the Federal

Employer's Liability Act the contributory negligence of an employee is not a complete defense but is merely a ground for diminishing the amount of recovery. (*Springer* v. *Southern Pac. Co.*, 145 Cal.App.2d 640 [302 P.2d 872]; 45 U.S.C.A. § 53.) In order to find its verdict for defendant under these instructions the jury must have found that defendant was guilty of no negligence which contributed as a proximate cause to decedent's death. Under such circumstances any error in the instructions or the admission of evidence relating solely to the decedent's contributory negligence cannot have been prejudicial to appellant. (*Tracy* v. *Terminal R. Ass'n of St. Louis*, 170 F.2d 635, 639-640.)'' In this case the jury was instructed, as in the case cited, that contributory negligence was not a defense but served only to minimize damages where it was found to exist.

■ Appellant claims the court erred when it instructed, at respondent's request as follows: ''If you find from the evidence that the injuries, if any, which the plaintiff suffered, were due to his own unusual sensitivity to the substances in question used by the defendant and that the defendant, in the exercise of reasonable care, could not have foreseen that plaintiff would be so affected by the use of such materials in the manner in which plaintiff used them or was exposed to them, then you must find for the defendant as to such claim of negligence.''

Appellant first attacks this instruction upon the ground that there was no evidence that appellant was unusually susceptible or sensitive to the substances used by him in his work. We do not so read the record. If appellant's decedent were injured, it was because he had contracted pulmonary emphysema through being subjected to deleterious substances used in his work. It was shown that hundreds of men had worked as painters for respondent in Sacramento during the 20-year period covered by the work-record year, and there was little, if any, evidence that any person engaged in the same work, other than appellant's decedent, had contracted that disease. It is common knowledge that some people are allergic to many substances which have no detrimental effect upon the great majority. There is testimony that most, if not all, of the substances used were commonly used in industry by painters, and Doctor Furlong testified that there was no scientific evidence that emphysema is associated with painting or with the exposure to fumes that painters encounter. Doctor Webster testified that the pulmonary degeneration ending in

emphysema may be caused by inhalation of irritating substances causing excessive secretion. The jury could have found that unusual sensitivity of appellant's decedent to the fumes and dust in his working area was the cause of his condition. The situation is similar to that presented to the Supreme Court of Missouri in *Evinger* v. *Thompson*, 364 Mo. 658 [265 S.W.2d 726]. The case was one brought under the Federal Employers' Liability Act, and the disabling disease alleged to have been contracted by the plaintiff in that action was dermatitis—claimed to have been caused by contact with a compound used by the defendant in a cooling system of its diesel engine. Noting that liability under the act is based upon negligence of the employer, bringing into operation the usual standard of ordinary care to provide safe working conditions for the employees, the Missouri court held the jury could have found under the evidence that the real cause of the injury was the unusual susceptibility or allergy of the injured employee, not due to any lack of ordinary care on the part of the employer. The court cited the annotation to the case of *Bennett* v. *Pilot Products Co.*, 120 Utah 474 [235 P.2d 525, reported in 26 A.L.R.2d 958], on the subject of a seller's or manufacturer's liability for injuries as affected by buyer's or user's allergy or unusual susceptibility to injury from the article. The annotated case was an action for damages for injury alleged to have been the result of the use of a permanent wave lotion distributed by the defendant. The Utah Supreme Court affirmed a nonsuit at the close of plaintiff's evidence therein, holding that the plaintiff's ailment, being the result of an allergy and not reasonably foreseeable, was not compensable. The footnote (p. 964 [26 A.L.R.2d]) in an introductory section of the annotation states the following: "Where a person who is allergic or unusually susceptible to injury from a product suffers injury from the use of the product and sues the seller or manufacturer to recover for the damages sustained, it would seem to be a logical defense that the cause of the injury is the allergy or unusual susceptibility and not the product."

The respondent herein was entitled to an instruction submitting the defense of unusual susceptibility to the jury and the instruction properly included the condition that to make the defense effective the jury must also find that the employer in the exercise of reasonable care could not have foreseen the probability of this unusual effect upon appellant's decedent.

Respondent was charged generally with the use of due

care in taking reasonable precautions to see to it that the materials it supplied for use by its employees were safe for them to use. The court in *Evinger* v. *Thompson, supra* (quoting from 56 C.J.S., § 286, p. 1050) said: "With respect to the duty to warn employees of the hazards of the work, the master is charged with knowledge of the usual and ordinary dangers and hazards to which he is exposing his employees, and is bound to know the normal condition of his premises and to know of the nature of the constituents and general characteristics of the substances used in his business so that he can give directions for the conduct thereof with ordinary safety to his servants performing the work with ordinary care; and particularly is the master chargeable with a knowledge of risks ascertainable only though a knowledge of scientific facts which an uneducated man is not presumed to know. The doctrine which imputes this knowledge to the master is called the doctrine of 'assumption of skill,' and for the purpose of determining this knowledge the law has a standard which does not vary with the actual capacity of the particular master, and consequently his ignorance is no excuse for a failure to warn." The trial court in this case properly told the jury by the challenged instruction that before unusual sensibility could stand as a defense it had to be accompanied by a finding that respondent, exercising reasonable care, could not have foreseen the probability of the unusual effect the materials it furnished might have upon appellant's decedent. We find no error in the instruction.

The court at respondent's request instructed the jury as follows: "To recover for negligence regarding the use of the various substances as claimed, plaintiff must prove by a preponderance of the evidence that defendant had actual knowledge or in the exercise of reasonable care should have known or realized, that the use of such materials or any of them, in the manner in which plaintiff used them or was exposed to them, was reasonably likely to cause harmful results, and did not take reasonably adequate measures to prevent such injuries." Appellant's complaint as to this instruction is that the instruction omits an essential element. Appellant argues: "The essential element which has been omitted from this instruction is that if the substances are inherently dangerous, the employer supplying such substances for his employees' use is charged with the nature and characteristic of such substances. He is presumed to have that knowledge." We find no evidence that the substances supplied by defendant

were inherently dangerous for use in the work which appellant's decedent was doing. There was evidence to the contrary in that the materials furnished were commonly used in such work.

■ Appellant assigns to an instruction on the subject of the effect as evidence of negligence of changes made by the respondent from time to time in places of work, procedures or equipment. The court told the jury that if it found the changes had been made after the date on which plaintiff claimed to have been injuriously affected by existing procedures, equipment and place of work, it was not to consider such changes *alone* as evidence of precedent negligence. Appellant makes no objection to that part of the instruction. But the court went on to tell the jury about the policy which underlay the rule, saying for instance that "The law holds it unjust to find that because an employer, acting with the aid of hindsight or experience, attempts to make his premises, equipment or procedures free from danger, he is therefore to be charged with negligence prior thereto." A good deal more to the same effect was included in the instruction, and we think it had better been left out. It made the instruction sound like an argument for the defense more than a statement of the law. However, the policy that underlies the rule was correctly stated, and we cannot believe that the material objected to was harmful to the plaintiff's cause.

■ As hereinbefore stated, in 1959 when Anderson went to the hospital where the physicians found that he was suffering from "advanced pulmonary emphysema," he was not told of his condition and was given a return to duty date, after which he worked for a considerable time before becoming work-disabled. During the trial plaintiff was seeking to prove that the Southern Pacific Company through the hospital physicians had been guilty of negligence in failing to inform Anderson of his condition and in returning him for work had been guilty of negligence contributing to his disablement. Plaintiff also requested an instruction to the effect that since the hospital physicians were agents of the Southern Pacific Company and had assumed the duty of determining Anderson's fitness for work, if this duty were negligently performed by and through the acts of the physicians, and if it caused or contributed to Anderson's disablement, and if it constituted proximate cause thereof, then it might find a verdict for Anderson for such damages as were thus caused. The evidence was excluded upon objection by respondent and

the instruction was refused. Appellant now charges error. The ground of the refusal, however, was that such negligence was not stated to be one of the issues in the pretrial order. The complaint stated four causes of action, and in summary three of them charged the defendant with negligent failure to provide safe appliances, a safe place to work, and safe substances with which to work. A third cause of action charged negligence in that respondent had ''negligently supervised, directed and controlled the operations in which plaintiff was engaged while he was performing the aforesaid duties . . . .'' The trial court ruled that in view of pretrial proceedings this count did not charge negligence in the work of the physicians at the hospital, even assuming that in what they did or omitted to do the physicians were acting as agents of respondent. (*McGuigan* v. *Southern Pac. Co.*, 129 Cal. App.2d 482 [277 P.2d 444].) The court held that to go into the question of negligent conduct by the physicians would unduly broaden the scope of the trial, would, without authority, bring in issues not included within the statement of issues in the pretrial order, and would send the case off into issues of malpractice. We think the court was correct in its analysis of the statement of issues, was justified in its ruling that this offered evidence should be excluded, and that, consequently, the requested instruction should be refused. Respondent's objection that to so broaden the issues would be unjust to it since it had had no notice of such an intention and had not prepared to meet the issue of negligence in the practice of the physicians was well taken. We think there was no abuse of discretion on the part of the trial court in excluding the evidence and refusing the requested instruction.

Appellant contends that the court erroneously instructed the jury that the defendant was entitled to the presumption that it had exercised ordinary care. The court gave BAJI Instruction No. 303-G, reading as follows: ''To be entitled to recover in this action, the plaintiff must prove by a preponderance of evidence that the defendant was negligent and that its negligence was a proximate cause of the injury of which the plaintiff complains. That burden of proof is not fulfilled by merely showing that the plaintiff was injured while on duty on the premises of the defendant. In the absence of evidence to the contrary, a presumption exists that the defendant exercised ordinary care and performed its duties under the law. *That presumption can be overcome by evidence, but only by evidence which, when weighed against*

*the presumption and its supporting evidence, if any, has more
convincing force, and from which it results that the greater
probability of truth lies therein."* (Italics added.) The
quoted instruction appears in that portion of California Jury
Instructions, Civil, Volume 2, devoted to the trial in state
courts of cases under the Federal Employers' Liability Act.
Similar instructions appear in those parts of BAJI devoted
to the presence and effect of the presumption of due care
in cases other than those under the federal statute. For a
long time it has been stated in decisions by the Supreme Court
and the appellate courts of this state that an instruction such
as was given here should not be given where the evidence
discloses the acts and conduct of the party charged with
negligence. As stated in *Stout* v. *Southern Pac. R.R.
Co.,* 127 Cal.App.2d 491, 496 [274 P.2d 194]: "It is now
firmly established that the presumption that a person has
exercised due care is dispelled from the case and is entitled
to no probative value when the litigant invoking the pre-
sumption has introduced evidence encompassing the subject
matter of the presumption. (*Speck* v. *Sarver,* 20 Cal.2d 585,
587-588 [128 P.2d 16]; *Mundy* v. *Marshall,* 8 Cal.2d 294, 296
[65 P.2d 65]; *Barker* v. *City of Los Angeles,* 57 Cal.App.2d
742, 749 [135 P.2d 573]; *Tice* v. *Kaiser Co.,* 102 Cal.App.2d
44, 51-52 [226 P.2d 624].) . . . ."

 In this case the pretrial order, in consonance with
the pleadings, stated the issues to be tried. The charges of
negligent conduct made against the respondent were the
subject of a great deal of testimony pro and con. The condi-
tions under which Anderson worked over the long period of
time he served as an employee of respondent were described
in detail and much testimony was received as to whether
or not those conditions, taking the evidence most strongly
against respondent, could have caused emphysema, the spe-
cific disease which ended Anderson's ability to work. The
chemical constituents of the various paints and varnishes
which were used by Anderson and his fellow painters, the
steps taken to ameliorate the conditions under which the
men worked with respect to their breathing the fumes given
off by those substances, the efficiency or lack of it which the
protective devices possessed, all these matters concerning
the negligence of respondent as charged, were the subject
of exhaustive investigation through testimony and other evi-
dence submitted during the trial. This was a case then in
which the presumption of due care had been dispelled from

the case and was entitled to no probative value. It was not true that the presumption could be overcome only by evidence which, when weighed against it, had more convincing force than the presumption. It was error to instruct the jury as was done, and as in *Baez* v. *Southern Pac. Co.*, 210 Cal. App.2d 714 [26 Cal.Rptr. 899], and in *Stout* v. *Southern Pac. R.R. Co.*, *supra*. "The crucial question posed is whether plaintiffs were prejudiced by the reading of the instruction." (*Stout* v. *Southern Pac. R.R. Co.*, *supra*, 127 Cal.App.2d 491, 497.) ▮▮▮ Respondent, while not disputing the applicability of the rule as to the dispelling of the presumption of due care, argues that the instruction was not prejudicial for a number of reasons. It says the plaintiff asked an instruction in identical language but addressed to the charge of contributory negligence; that during the lengthy trial there were many discussions between court and counsel and much ado as to what instructions ought to be given the jury on various topics; that in all of this no charge was made by appellant that the instruction here complained of was wrong; that appellant not only proposed a similar instruction regarding plaintiff's contributory negligence but in a lengthy memorandum of points and authorities in support of plaintiff's objections to instructions, which memorandum appears in the record, plaintiff did not object to this particular instruction, although he objected to many others; that counsel on both sides knew for a long time before the case was submitted to the jury what instructions were to be given, made objections on both sides to many, but neither side pointed out that the giving of this instruction, or the comparable one applicable to plaintiff, was error. All of this argues respondent amounts to invited error and to the raising of an estoppel at this late date to object to the faulty instruction.

It is to be noted that the impact of the instruction requested with respect to contributory negligence was far less than that which may be ascribed to the instruction here complained of where contributory negligence was not a defense, whereas the failure to prove negligence of the respondent was fatal. Furthermore, and without reciting the evidence, we can say with confidence that the proof of contributory negligence on the part of the plaintiff was extremely weak, if it amounts to anything at all. It was not until the emphysema was found to be in an advanced stage that the hospital's physicians informed plaintiff that he had con-

tracted the disease. Even so, they sent him back to work under the same conditions that had existed before except as ameliorated by some efforts on the part of the defendant through the years to lessen the impact of the deleterious materials being used; and the respondent furnished expert testimony that not only did the defendant not know the cause of emphysema but that no one else did, including doctors. The error in giving the instruction cannot be excused under the doctrine of an invited error under the circumstances prevailing in this case. Whether either party was entitled to the presumption was to be separately determined by considering the evidence addressed to the charge of negligence against each.

Appellant complains of error in refusing to admit certain evidence. First, the complaint is against the ruling of the court sustaining objections to the qualification of a witness offered as an expert in the field of customary practices in doing the various things done by plaintiff during the periods in question. Next, complaint is made of the court's refusing certain proposed evidence that other employees on the same or similar jobs as those worked on by plaintiff had sustained respiratory injuries. In such matters the court exercises discretion, and without going further we think that no detailed discussion of these complaints of error is necessary.

As we have said the record discloses error. Were the errors prejudicial to the extent that the judgment should be reversed? We think not. By article VI, section 4½, of the Constitution it is provided that "No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence . . ., unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." In *People* v. *Watson*, 46 Cal.2d 818, at page 836 [299 P.2d 243], the court said: "[I]t appears that the test generally applicable may be stated as follows: That a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of error."

The record here discloses a very weak case for the plaintiff. While we have stated that instructions upon the

statute of limitations should not have been given because as a matter of law that defense had not been made out, we think the general verdict returned by the jury was not based upon a holding that the action was barred, first, because such a holding under the evidence would have been highly improbable, and second, because a general verdict based upon limitation of action was not open to the jury in view of the fact that the jury was told by the court that limitation of action in this case could only be a *partial* defense.

The only other error that deserves consideration was that committed by the court when it instructed the jury that on the issue of negligence the defendant was entitled to a presumption of due care. Ordinarily this would be a serious error. But when the error is looked at with the whole record being considered, we are left with the firm opinion that it is reasonably probable a result more favorable to appellant would not have been reached in the absence of the error. Proof of causation was extremely speculative, and as to negligence, the record discloses constant concern for worker welfare and the adoption of devices to ameliorate adverse working conditions by protective devices furnished by respondent. The record shows these devices were changed from time to time as other devices became available. Indeed, the record shows that plaintiff's claims of negligent conduct were not so much that care was lacking as that the protective devices were inadequate, a subject on which the evidence was sharply conflicting. Without going further in discussion, we are satisfied that the judgment appealed from should be affirmed.

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.

A petition for a rehearing was denied January 7, 1965, and appellant's petition for a hearing by the Supreme Court was denied February 10, 1965. Peters, J., was of the opinion that the petition should be granted.