[Civ. No. 18357.   First Dist., Div. Two.   July 30, 1959.]

EULA CHARLOTTE ROGERS, as Administratrix, etc., Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation), Respondent.

Ryan & Ryan, Thomas C. Ryan and Thomas Michael Ryan for Appellant.

Bledsoe, Smith, Cathcart, Johnson & Phelps and Robert A. Seligson for Respondent.

DOOLING, J.—This is an appeal by plaintiff, Eula Rogers, administratrix of the estate of Jack E. Rogers, from the judgment entered following a verdict for defendant in an action

for wrongful death brought under the Federal Employers' Liability Act. (45 U.S.C.A. § 51 et seq.)

Rogers was an employee of defendant, foreman of a switching crew. On April 13, 1956, while riding on the stirrup of a moving flat car loaded with lumber, he was crushed to death between this car and another flat car located on an adjacent track.

Norman, a switchman on Rogers' crew, witnessed the accident and testified as to the following facts concerning the switching operation which resulted in the accident. One of respondent's engines at its Bayshore yards was connected with three flat cars, two containing precut lumber and one containing plasterboard. One of the lumber cars was coupled to the engine and the plasterboard car was the third or last in line. The task for the switching crew was to reverse the order of the cars and to position the plasterboard car next to the engine. To accomplish this the plasterboard car was to be "kicked" into track 89 and the two lumber cars into track 87 (a car is "kicked" when it is pushed by the switch engine until it reaches a desired speed and then uncoupled and permitted to roll). The plasterboard car was kicked and it stopped short of track 89 almost "fouling" or partially blocking passage on track 87.

Rogers was standing by the track 87 switch approximately 120 feet from Norman. He called to Norman, "Will it clear?" and Norman, after checking in the customary manner replied, "Yes, but it will be close." Rogers then gave the "kick" sign which Norman relayed to the engineer, the engine proceeded to back up and the pin was pulled uncoupling the two lumber cars. After the cars passed Rogers at the 87 switch, he threw the switch and then ran about 70 feet after the cars and jumped on the rear end of the first car. At this time the front of the first car had already successfully cleared the "fouling" point. Rogers then stepped on the stirrup of the second car and rode about 25 to 30 feet before the accident occurred.

The two cars were traveling at a speed comparable to that of a fast walk and Norman, whose duty it was to jump on the cars and brake them if they were moving too rapidly, testified that he did not feel that they were moving too fast and that there was no necessity for riding the cars. As Rogers neared the plasterboard car he "hugged" the side of the car and continued the ride. At this point Norman could no longer see

Rogers and he never realized that Rogers would not clear the "fouling" point, although he "knew it would be close." There was nothing blocking Roger's line of sight to the plasterboard car and approximately seven seconds elapsed from the time he boarded the car and the time the accident occurred.

Rogers was in charge of the switching operation. His signal started the engine, he threw the switch sending the cars onto the 87 track, he chose to use the "kicking" method rather than a "shoving" procedure which would insure exact placement of the cars; and it was not his duty to jump on the moving cars.

Norman measured the clearance in the conventional railroad manner by standing next to the nearest rail of the track adjacent to the plasterboard car. He extended his arms, and his hands did not touch the plasterboard car, indicating sufficient clearance for the lumber cars to pass.

The engineer and the pin puller on Rogers' crew testified that Rogers directed the operation and made the signals and that the manner of conducting such an operation was entirely up to the foreman. The assistant general yardmaster testified that the determination of clearance as made by Norman was only for the purpose of ascertaining whether the cars would collide. It is commonly known throughout the railroad industry that such a measurement would not indicate that there would be sufficient additional clearance for a man hanging on the side of a car.

Appellant contends that the verdict was against the uncontradicted evidence and was contrary to law. To support this contention she asserts that Norman had the duty to warn Rogers of the danger. She also asserts that Norman was guilty of negligence as a matter of law in failing to warn Rogers of the insufficient clearance.

There was ample evidence to support an implied finding that the determination of clearance requested by Rogers pertained only to the cars. The procedure Norman used was standard and it was commonly understood by railroad men that such measurement was only for the purpose of ascertaining whether there was clearance for equipment. At the time when Rogers jumped on the moving cars Norman had not yet had the opportunity to make a decision as to whether the cars were traveling too fast. Approximately seven seconds later the accident occurred.

Cases are cited by appellant for the proposition that under

the Federal Employers' Liability Act an employer is liable if its negligence played any part in causing the accident. (*Grand Trunk Western R. Co.* v. *Boylen*, 81 F.2d 91; *McAllister* v. *Suncook Valley R.R.*, 93 N.H. 400 [42 A.2d 733].) As respondent points out, the courts in those cases merely affirmed judgments for plaintiffs. Here the jury was properly instructed concerning the Federal Employers' Liability Act and the evidence supports the implied finding of no negligence on the part of respondents.

■ Several of the claims of error apply only to the defense of contributory negligence. The jury was properly instructed that under the Federal Employers' Liability Act the contributory negligence of an employee is not a complete defense but is merely a ground for diminishing the amount of recovery. (*Springer* v. *Southern Pac. Co.*, 145 Cal.App.2d 640 [302 P.2d 872]; 45 U.S.C.A. § 53.) ■ In order to find its verdict for defendant under these instructions the jury must have found that defendant was guilty of no negligence which contributed as a proximate cause to decedent's death. Under such circumstances any error in the instructions or the admission of evidence relating solely to the decedent's contributory negligence cannot have been prejudicial to appellant. (*Tracy* v. *Terminal R. Ass'n of St. Louis*, 170 F.2d 635, 639-640.) This conclusion makes it unnecessary for us to determine whether, as claimed by appellant, there was error in allowing one of defendant's employees to interpret a rule of the company relating to decedent's duty in performing the switching operation, in instructing that a violation of this rule by decedent would be negligence *per se*, or in allowing testimony concerning the amount of alcohol in decedent's blood and the effect thereof upon decedent. All of these matters, conceding they involved error, went only to the question of contributory negligence and could only have reduced the plaintiff's verdict if the jury had found that defendant was guilty of any actionable negligence.

■ The jury was instructed that if there were two ways of performing the switching operation one of which was safe and the other fraught with risk of injury to decedent and the decedent voluntarily, without the choice being in any way dictated by the negligence of defendant, chose the unsafe and more dangerous way, "and that such a choice was the sole proximate cause of his injuries," defendant would not be liable.

The instruction cannot have been prejudicial to appellant.

In order to make it applicable the jury must find that the choice of the dangerous way was the ''sole proximate cause of his injuries.'' If they found that the defendant's negligence was one of the proximate causes of the injury the instruction by its express terms would not apply since decedent's conduct would not then be the sole proximate cause. We must ascribe to the jury a reasonable knowledge of the meaning of the English language.

■ Appellant's claim that certain actions of the trial judge prevented her from having a fair trial are not open to her since no objection was made at the time to the questioned conduct of the trial judge. (48 Cal.Jur.2d, Trial, § 392, p. 402.) ■ Alleged errors going only to the question of the amount of damages cannot have been prejudicial since the jury's verdict was for respondent. (*Cucuk* v. *Payne,* 140 Cal. App.2d 881, 887-888 [296 P.2d 7].)

Judgment affirmed.

Kaufman, P. J., and Draper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 22, 1959.