Wayne T. WILSON, Appellant,

v.

BURLINGTON NORTHERN, INC., a corporation, Appellee.

No. 81–1429.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1981.

Decided Feb. 8, 1982.

Rehearing Denied March 26, 1982.

Certiorari Denied June 14, 1982.

See 102 S.Ct. 2934.

DeParcq, Anderson, Perl, Hunegs & Rudquist, P. A., Patrick J. Foley (argued) Minneapolis, Minn., Higgins & Okun, John J. Higgins, Jr., Omaha, Neb., for appellant.

Knudsen, Berkheimer, Beam, Richardson & Endacott, Richard A. Knudsen, Kenneth C. Stephan (argued), Lincoln, Neb., for appellee.

Before HEANEY and STEPHENSON, Circuit Judges, and DAVIES,* Senior District Judge.

HEANEY, Circuit Judge.

Plaintiff Wayne Wilson was injured while employed by Burlington Northern, Inc. He brought suit against the railroad under the Federal Employers' Liability Act (F.E.L.A.), 45 U.S.C. § 51 *et seq.* After a trial, the jury found that the plaintiff was not entitled to recover damages. The plaintiff appeals from the district court's denial of his motion for a new trial. We reverse and remand for a new trial.

I. FACTS.

Wilson was injured while helping carry a large pan that attaches to a railroad hopper car. The pan is approximately fifteen feet long, eighteen inches wide and weighs about 290 pounds. At the time Wilson was

* The Honorable RONALD N. DAVIES, United States Senior District Judge, for the District of

injured on February 6, 1978, the pans were installed manually. Four persons carried each pan approximately twenty feet from a storage area to the hopper car. The car at that time would be on stands, with the bottom standing approximately four feet above the ground. The men would bend over and carry the pan beneath the car, where they would then lift up the pan and attach it to the car.

Prior to January, 1977, the pans had been installed by using a mechanical jack which required no manual lifting. In January, 1977, however, the railroad's employees stopped using the jack. At the time of his injury, Wilson was of the understanding that the jack could not be used to install pans. The railroad contends that it did not order the use of the jack terminated and that "the jack was available and could be used on the date of the injury." The fact remains undisputed, however, that regardless of who ordered the use of the jack to be discontinued, for approximately one year prior to the injury, defendant's employees had not used the jack to install the pans.

On the day of the injury, Wilson was not assigned the specific task of installing pans in hopper cars. Instead, a group of men with whom Wilson was working asked him to assist them in carrying a pan. As was the custom at the Burlington Northern, Wilson complied with the request to aid others asking for additional help. While lifting the pan into place, Wilson felt a pain in his back and leg.

Wilson reported the injury to the company physician and underwent therapy for a brief period. Thereafter, the company doctor certified that Wilson was "able to work as a welder on February 22, 1978." The doctor did not instruct Wilson to restrict his activities, other than cautioning him to avoid "heavy lifting." On February 24, 1978, Wilson was again working with another man on a hopper car. When asked for assistance, Wilson got down on his hands and knees to inspect the equipment on the bottom of the car. He hammered a

North Dakota, sitting by designation.

chute into alignment, and when he stood up, he again experienced pain in his back and leg.

Wilson underwent surgery for his injury, and left his job with the railroad. He has never been approved by a physician to return to work for the railroad and has not done so.

Wilson sued the Burlington Northern in two counts under F.E.L.A. for negligently causing his injury. Wilson's first cause of action alleged that the railroad's negligence caused his initial injury on February 6, 1978. The second cause of action alleged that the Burlington Northern negligently caused the plaintiff's reinjury to his back and leg on February 28, 1978. After trial, the jury returned a general verdict against the plaintiff. The district court entered judgment for the defendant and denied the plaintiff's motion for a new trial. The plaintiff now appeals to this Court.

## II. DISCUSSION.

■ The plaintiff contends that the district court erred in submitting the issue of contributory negligence to the jury. In a F.E.L.A. case, the burden of proving contributory negligence is, of course, on the railroad. *E.g., Paluch v. Erie Lackawanna Railroad Co.*, 387 F.2d 996, 999 (3d Cir. 1968). A defendant is entitled to a contributory negligence instruction if there is any evidence to support that theory. *E.g., Dixon v. Penn Central Co.*, 481 F.2d 833, 835 (6th Cir. 1973). But if no evidence is presented from which a jury could properly find a lack of due care by a plaintiff, then it is generally fundamental error for the district court to give a contributory negligence instruction, and a plaintiff is entitled to a' new trial. *Paluch v. Erie Lackawanna Railroad Co., supra*, 387 F.2d at 999; *Morran v. Pennsylvania Railroad Co.*, 321 F.2d 402, 403 (3d Cir. 1963).

■ The defendant contends here that there was sufficient evidence of plaintiff's lack of due care to justify the district court's contributory negligence instruction.[1] The railroad alleges that the jack was available for installing the pan, but the plaintiff

1. The district court's instructions regarding contributory negligence were as follows:

INSTRUCTION NO. 12

In addition to denying that any negligence of the defendant caused any injury or damage to the plaintiff with respect to each of plaintiff's causes of action, the defendant alleges, as a further defense, that some contributory negligence on the part of plaintiff himself was a cause of any injuries and consequent damages plaintiff may have sustained.

Contributory negligence is fault on the part of a person injured, which cooperates in some degree with the negligence of another, and so helps to bring about the injury. In the present case, with respect to plaintiff's first cause of action, the defendant alleges that the plaintiff, Wayne Wilson, was guilty of contributory negligence in one or more of the following particulars:

1) In failing to exercise reasonable care and precaution for his own safety and well-being;

2) In failing to request any additional physical help necessary in the performance of plaintiff's assigned duties.

With respect to the plaintiff's second cause of action, the defendant alleges that the plaintiff was guilty of contributory negligence in one or more of the following particulars:

1) In failing to exercise reasonable care and precaution for his own safety and well-being;

2) In failing to obey instructions not to do heavy lifting or assume any positions which would reinjure his back when he had reason to believe it was beyond his physical capabilities.

By the defense of contributory negligence, the defendant in effect alleges that, even if the defendant may have been guilty of some negligent act or omission which was one of the causes, the plaintiff himself, by his own failure to use ordinary care under the circumstances for his own safety, at the time and place in question, also contributed one of the causes of any injuries and damages plaintiff may have suffered.

The burden is on a defendant, alleging the defense of contributory negligence, to establish, by a preponderance of the evidence in the case, the claim that the plaintiff himself was also at fault in one or more of the claimed particulars, and that such fault contributed one of the causes of any injuries and consequent damages plaintiff may have sustained.

You may not find contributory negligence on the part of the plaintiff, however, simply because he acceded to the request or direction of the responsible representatives of

chose not to use it. Additionally, the railroad contends that the plaintiff could have requested additional employees to help carry the pan if he thought it was dangerous. Thus, the defendant argues that because the decision to lift the pan without the jack or additional help was a matter of employee choice, it was not error to instruct the jury regarding contributory negligence. Furthermore, the railroad argues that Wilson was also contributorily negligent on February 28, 1978, in failing to obey the doctor's restrictions on his work activity. We disagree.

The railroad's argument simply is not consistent with the realities of the workplace. Wilson was asked to help carry the pan. As was the custom at the Burlington Northern, he complied with the request. When a man's assistance is needed and asked for, he helps—there is no choice involved.

Moreover, the argument that Wilson could have used the jack is implausible. At the time of the injury, the pans were always installed manually; no one had used the jack for over a year.[2] In addition, the other three men installing the pan were present and ready to begin carrying it over to the car. Finally, there were railroad cars bunched around the particular car on which the men were working. These cars would have had to be moved in order to use the jack.[3] Obviously, in this situation, Wilson could not reasonably have been expected to decline to carry the pan and to ask that the jack be used instead.

Similarly, there is no evidence that the pans were ever carried by more than four men. Thus, Wilson could not reasonably have been expected to ask that men be pulled off other jobs to help carry the pan when four men were already available.

Under the circumstances present here, Wilson's decision to help carry the pan was not a matter of free choice nor was it in any way unreasonable. He was simply doing his job and assisting other employees in need of help—as the railroad fully expected him to do.

Similarly, Wilson did not fail to exercise due care when he was reinjured on February 28, 1978. The railroad's doctor had certified that Wilson was ready to begin working again on February 22. Moreover, the doctor's instructions regarding restricting work activity apparently were nothing more than a perfunctory caution to avoid heavy lifting or assuming other positions that could reinjure Wilson's back and leg.[4]

---

his employer that he work at a dangerous job, or in a dangerous place, or under unsafe conditions.

INSTRUCTION NO. 13

Section 3 of the Federal Employers' Liability Act, 45 U.S.C.A. § 53, provides in part that:

In all actions ... brought against any ... common carrier by railroad ... to recover damages for personal injuries to any employee ... the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.

So, if you should find, from a preponderance of the evidence in the case, that the defendant was guilty of negligence which caused, in whole or in part, any injury or damage to the plaintiff, and should you further find, from a preponderance of the evidence in the case, that the plaintiff himself was guilty of contributory negligence which contributed toward bringing about all or part of his injury, then the total award of damages to the plaintiff must be reduced by an amount equal to the percentage of fault or contributory negligence chargeable to the plaintiff.

2. There is conflicting testimony on whether the defendant ordered the use of the jack terminated. Our decision, however, does not rest on this fact. Regardless of who ordered the use of the jack discontinued, it is undisputed that in February, 1978, the jack was not being used by employees and that the railroad was aware of this fact.

3. The use of the jack requires a substantial amount of clear track at each end of the hopper car. When the use of the jack was discontinued, railroad cars were bunched together in a fashion that made the use of the jack impracticable unless cars were moved.

4. The exact language of the physician's cautionary instructions do not appear in the record. The railroad does not point to any evidence that shows that the doctor's restrictions were anything more than an oral caution to

Apparently, the doctor placed no specific restrictions on Wilson's work activity. Under these circumstances, it was hardly a contravention of the doctor's work restrictions—if they can be considered restrictions at all—for a railroad worker who regularly engages in vigorous manual labor to step under a car and hammer a piece of equipment back into place.

Therefore, since there was no evidence that Wilson's own negligence contributed to either of his injuries, the district court erred by permitting the jury to consider the issue. *Paluch v. Erie Lackawanna Railroad Co., supra*, 387 F.2d at 999; *Morran v. Pennsylvania Railroad Co., supra*, 321 F.2d at 403.

The defendant next argues that even if there was no evidence of contributory negligence, the district court's instruction was harmless error. Once again we disagree.

■■ Under F.E.L.A., contributory negligence is not a complete bar to recovery; it may be used only to diminish damages. 45 U.S.C. § 53. The amount of an employee's damages is reduced in proportion to the amount of negligence attributable to the employee—regardless of the extent of the plaintiff's contributory negligence. 45 U.S.C. § 53; Woods, *The Negligence Case: Comparative Fault*, at 77 (1978).[5]

Relying on *Rogers v. Southern Pacific Co.*, 172 Cal.App.2d 493, 342 P.2d 258, 260 (1959), Burlington Northern argues that even if the district court erred in giving a contributory negligence instruction, F.E.L.A.'s pure comparative negligence scheme renders the error harmless here because the jury found that the plaintiff was not entitled to any damages. The *Rogers* court reasoned that because F.E.L.A. utilizes a pure comparative negligence scheme,

> [i]n order to find its verdict for defendant under these instructions the jury must have found that defendant was guilty of no negligence which contributed as a proximate cause to decedent's death.

Under such circumstances any error in the instructions or the admission of evidence relating solely to the decedent's contributory negligence cannot have been prejudicial to appellant.
*Id.*

There is some logic to the rule propounded by the *Rogers* court. This rule, however, ignores the practical realities that accompany the use of juries and general verdicts. Even with adequate instructions regarding the effect of contributory negligence under F.E.L.A., there is a risk that the jury may fail to understand the statutory comparative negligence scheme. And when, as here, a general verdict is used, a court cannot ascertain whether or not the jury correctly applied the applicable law in deciding to award no damages. Thus, we simply do not share the conviction of the *Rogers* court that because the jury awarded the plaintiff no damages, it *must* have found that the defendant was not guilty of any negligence which caused the plaintiff's injury.

■ We believe that the better rule is the one followed by the federal courts; that is, when there is no evidence from which a jury could reasonably find a lack of due care by the plaintiff, it is reversible error to submit the issue of contributory negligence to the jury. *E.g., Paluch v. Erie Lackawanna Railroad Co., supra*, 387 F.2d at 999; *Morran v. Pennsylvania Railroad Co., supra*, 321 F.2d at 403–404. In short, when there is no evidence from which a reasonable person could find an employee contributorily negligent, there simply is no reason to risk confusing the jury by giving such an instruction. Because of this risk of confusion, we cannot say that Wilson was not prejudiced by the unjustified contributory negligence instruction. Therefore, the error was not harmless.

The plaintiff also assigns as error numerous other acts of the district court. Be-

avoid heavy lifting as Wilson asserts in his brief.

5. F.E.L.A. provides a federal comparative negligence scheme rather than relying on the standards of the states in which the injury occurred. 45 U.S.C. § 51; *New York Central Railroad Co. v. Winfield*, 244 U.S. 147, 149–152, 37 S.Ct. 546, 547–548, 61 L.Ed. 1045 (1917).

cause of our disposition of the contributory negligence issue, we need not reach these contentions. Moreover, because of the importance of the contributory negligence question to the disposition of this case, a new trial is necessary on all issues. Therefore, we reverse and remand this matter for a new trial consistent with our opinion.