STEVEN L. AUER, APPELLANT, V. BURLINGTON NORTHERN
RAILROAD COMPANY, APPELLEE.
428 N.W.2d 152

Filed August 19, 1988. No. 86-320.

Herbert J. Friedman, of Friedman Law Offices, for appellant.

Steven D. O'Brien, of Knudsen, Berkheimer, Richardson & Endacott, for appellee.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and BURKHARD, D.J.

GRANT, J.

This is an appeal from the district court for Lancaster County. Plaintiff-appellant, Steven L. Auer, brought this action pursuant to the Federal Employers' Liability Act, 45 U.S.C. §§ 51 et seq. (1982) (FELA), for injuries sustained in two work-related accidents during the time plaintiff was employed by the defendant-appellee, Burlington Northern Railroad Company. In his first cause of action, plaintiff sought damages for back injuries he alleged were received on October 7, 1981, during his employment while operating an

Electromatic Senior machine. The accident will be referred to as the "Electromatic accident." In his second cause of action, plaintiff sought damages for aggravation of the preexisting injuries. Plaintiff alleged the aggravation was caused by an accident on March 23, 1982, while he was riding as a passenger in a truck operated by an employee of defendant. This accident will be referred to as the "truck accident." The defendant answered, admitting the status of the parties, denying the other allegations of the petition, and alleging contributory negligence on the part of the plaintiff. After trial to a jury, the jury returned a verdict in favor of the defendant on plaintiff's first cause of action, and in favor of plaintiff on the second cause of action in the amount of $5,205.16. Plaintiff appeals from the verdict and judgment on each cause of action.

In his brief, plaintiff assigns five errors, contending that the district court erred (1) in submitting the issue of contributory negligence on both causes of action; (2) in failing to sustain plaintiff's motion for a directed verdict on the question of liability at the conclusion of all the evidence on both causes of action; (3) in failing to instruct the jury that assumption of risk is not a defense under the FELA; (4) in failing to strike juror Steve Bowen for cause, or in the alternative, to declare a mistrial; and (5) in overruling plaintiff's motion in limine during the course of the trial and permitting evidence as to plaintiff's drinking and drug problems. We affirm.

The record reveals that the plaintiff was first employed by defendant in 1974 as a general laborer. He first began to operate the Electromatic Senior in April 1981. The Electromatic is a track maintenance machine which operates on the railroad tracks and raises the track in order to level the track and make it smooth for high-speed rail traffic. When the machine operator activates the hydraulic jacks on the machine, the machine lifts and adjusts the rails and ties in relation to a beam of light projected by the machine. There are safety hooks on the machine designed to hold the jacks up while the machine is moving. If the hydraulic jacks come down while the Electromatic is moving, the machine may derail. The plaintiff testified that in July 1981, he was moving the Electromatic from Lincoln to Seward when the jacks "came down." The plaintiff

was not injured by the incident and "put the jacks back up and went on down the track." The plaintiff testified that he knew the jacks were not supposed to come down while the Electromatic was moving. The plaintiff did not report the malfunction to the defendant that summer.

Testimony at trial showed that, as of August 1981, the safety hooks on the Electromatic had broken off. Testimony at trial was to the effect that the safety hooks would break if the hydraulic jacks were accidentally activated by the machine operator. In August 1981, the plaintiff made a complaint to his section foreman about the absence of the safety hooks on the Electromatic. Other testimony was to the effect that the presence or absence of the safety hooks would not prevent the hydraulic jacks from coming down.

On October 7, 1981, the plaintiff was assigned to move the Electromatic from David City to Seward. In so doing, the machine passed through Ulysses. Plaintiff testified that he was standing in the machine at the time and operating the machine with controls at the end of a cable. Testimony established that, although a seat was provided in the Electromatic, it was customary for the machine operators to stand while the operator was moving the machine from one location to another, because of poor visibility.

Plaintiff testified that as he was operating the Electromatic through Ulysses, he was not looking at the track, but instead was looking off to his right toward the town of Ulysses. As he was traveling through Ulysses, the plaintiff testified that the Electromatic came to a "sudden stop" and derailed. Upon the resulting impact, the plaintiff, who was standing sideways in the machine, struck his back on the control panel of the machine. After the impact, plaintiff dismounted from the machine and saw that all four wheels of the machine were off the track and that the hydraulic jacks were down. The plaintiff saw that approximately 100 gallons of hydraulic fluid had drained out of the machine because one of the oil plugs on the machine had broken.

On November 12, 1981, plaintiff filled out a personal injury report with the railroad. The report did not specifically refer to the derailment incident. In his report, the plaintiff stated:

"While working with Seward Section the last few weeks of Oct, I began having backaches, part time at first Constant Later on." At trial, plaintiff testified as follows:

Q. Mr. Auer, you do not know whether or not your back injury was the result of that machine incident or doing heavy work in late October, do you?

A. I also did some heavy work that day too, of the accident. I'm not for sure, no.

Q. So, you know that there was a machine accident. You know you have done heavy labor since then but you personally don't know when you injured your back, do you?

A. I know when it started hurting.

After the plaintiff began seeing a doctor, he was transferred to light duty in November.

On March 22 and 23, 1982, the plaintiff was assigned to light-duty work as a flagman with a welder in the Hobson Yards in Lincoln. The welder had made complaints to the section foreman and the roadmaster about the condition of the ungraded roads in the Hobson Yards work area prior to March 23. The roads were customarily traveled by company vehicles on a daily basis. On or about March 23, the welder was driving a company truck through the Hobson Yards. Plaintiff was a passenger in the truck. The welder had on his seatbelt at the time. Plaintiff was not wearing a seatbelt. The welder testified that although he was aware of a rule in the rule books regarding the use of seatbelts, this rule was not enforced. As the welder was driving through the yards at approximately 10 to 12 miles per hour, he "hit some chuckholes that were covered with water and the truck hit with a lot of force," causing the plaintiff to bounce off the seat and strike his head on the roof of the cab. The speed limit at the time was 15 miles per hour. Plaintiff testified that he felt a "pop" in his back and experienced pain in his lower to middle back. On April 5, 1982, the plaintiff filled out a personal injury report with regard to the second incident. Plaintiff described his injuries as "[b]ack strain — continuation of previous injury."

After the second accident, plaintiff testified that his back pain "got much worse" and that he went to several different

doctors for treatment. Plaintiff did not return to work from March 29 through April 13, 1982. Plaintiff returned to light-duty work in April, after defendant's doctor placed him under a 25-pound weight-lifting restriction. Plaintiff worked off and on through November 4, 1983, at which time he was laid off. During 1984 and 1985, plaintiff put in bids for various jobs with the defendant and contacted various outside employers, but was unsuccessful in his attempts to secure employment. In July and December of 1984, however, plaintiff did bid on and receive job awards as a flagman with the defendant. As discussed above and as of July 1985, the defendant's doctors had not lifted the weight-lifting restriction placed on the plaintiff. At the time of trial, plaintiff was employed as a janitor at a local restaurant.

In his first assignment of error, plaintiff contends that the district court erred in submitting the issue of contributory negligence on both causes of action.

In considering whether the evidence in a civil case is sufficient to sustain findings necessary for a verdict, this court will not reweigh the evidence, but considers the verdict in a light most favorable to the successful party and resolves evidential conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987); *Alliance Nat. Bank v. State Surety Co.*, 223 Neb. 403, 390 N.W.2d 487 (1986).

Under the FELA, contributory negligence on the part of the plaintiff is not a complete bar to recovery and may only be used to diminish the amount of damages. 45 U.S.C. § 53; *Wilson v. Burlington Northern, Inc.*, 670 F.2d 780 (8th Cir. 1982). The burden of proving contributory negligence is on the defendant. *Birchem v. Burlington Northern R. Co.*, 812 F.2d 1047 (8th Cir. 1987).

As to the Electromatic accident, plaintiff contends that there was insufficient evidence to warrant the contributory negligence instruction to the jury. Plaintiff relies on *Wilson v. Burlington Northern, Inc., supra*. In *Wilson*, the court held that when there is no evidence from which a jury could reasonably find a lack of due care by the plaintiff, it is reversible

error to submit the issue of contributory negligence to the jury.

In the present case, there was sufficient evidence of the plaintiff's contributory negligence to warrant the jury instruction. The court instructed the jury that the jury could find the plaintiff contributorily negligent in one or more of the following particulars:

1. Plaintiff failed to utilize reasonable precautions for his own safety; he failed to adopt safe work habits; and he failed to assume a safe position while performing his assigned duties;

2. Plaintiff failed to institute safe procedures so as to not injure himself in violation of safety rules and common practice;

3. Plaintiff failed to conduct himself in accordance with established customs and practices applicable to those particular duties in the performance of his assigned responsibilities;

4. Plaintiff failed to properly inspect the machine of which he was in charge; and

5. Plaintiff failed to report any alleged defects of the machine of which he was in charge.

In connection with the Electromatic accident, plaintiff testified that he was gazing over to the right looking at the town of Ulysses at the time the derailment occurred. He was not facing forward and was not observing the track. As stated above, there was evidence from the plaintiff that he had driven the Electromatic in July 1981, when the hydraulic jacks drifted down. On that occasion the machine stopped without derailing. Plaintiff did not report this incident to the defendant before the October 1981 accident. There was evidence upon which the jury could have found that the plaintiff was contributorily negligent, unlike the situation in *Wilson*. The instruction was warranted in the present case.

With regard to the contributory negligence instruction as to the truck accident, the jury was instructed that if a preexisting condition was aggravated by the accident, the plaintiff was entitled to recover only for the extent of the aggravation of the preexisting condition. On the second cause of action, the jury returned a verdict in the amount of $5,205.16. Although the

plaintiff does not directly attack that amount of damages awarded by the jury, plaintiff's apparent theory on appeal is that if the jury had not been instructed on the contributory negligence as to the second cause of action, the jury would have awarded the plaintiff greater damages.

Plaintiff contends that as it was the custom of the defendant to disregard the enforcement of the company's seatbelt rule, the plaintiff could not have been contributorily negligent in failing to use the seatbelt on or about March 23, 1982. Defendant contends that a company rule required the wearing of seatbelts. It has been held that the failure of a defendant company to enforce its safety rules constitutes negligence. *Ybarra v. Burlington Northern, Inc.*, 689 F.2d 147 (8th Cir. 1982). It has been held that the employee's failure to obey safety rules may be considered by the jury in assessing contributory negligence. See *Flanigan v. Burlington Northern Inc.*, 632 F.2d 880 (8th Cir. 1980).

The issue of whether the plaintiff was contributorily negligent in failing to wear a seatbelt in this factual situation, involving the alleged violation of a work rule, was a question for the jury. The jury returned a general verdict for the plaintiff, and it is unclear whether or not the jury determined that the plaintiff was contributorily negligent.

There was sufficient evidence upon which to instruct the jury as to plaintiff's contributory negligence on both causes of action. Plaintiff's first assignment of error is without merit.

In his second assignment of error, plaintiff contends that the district court erred in failing to sustain the plaintiff's motion for a directed verdict on the question of liability at the conclusion of all the evidence.

In order to direct a verdict for the plaintiff, there can be but one reasonable conclusion as to the verdict. *Parker v. Seaboard Coastline R.R.*, 573 F.2d 1004 (8th Cir. 1978). This is not a res ipsa loquitur case. Plaintiff must establish negligence on the part of the defendant to prevail. Plaintiff alleged and had the burden of proving that defendant was negligent.

With regard to the Electromatic accident, insofar as the second assignment of error is concerned, there was testimony that the Electromatic had had electrical wiring problems and

had malfunctioned in the past and that safety hooks were not present on the machine at the time of the derailment. There was other testimony that the hooks were not strong enough to hold up the hydraulic jacks if the hydraulic system was activated—either accidentally or intentionally. If the hydraulic jacks were not in an up position, the Electromatic might derail. Other testimony showed the jacks sometimes "drifted down" for no apparent reason. With regard to the derailment itself, there was testimony that derailments were not uncommon and occurred as part of the "the normal course of the business." As there was conflicting evidence as to the exact cause of the derailment, the district court did not err in refusing to grant the directed verdict on the first cause of action.

As to the second cause of action, we first note that the jury returned a verdict in favor of the plaintiff. A party cannot claim that the submission of an issue to the jury is error, where the finding on the issue is favorable to him. *Prell v. Murphy*, 178 Neb. 278, 133 N.W.2d 5 (1965). Plaintiff's second assignment of error is without merit.

In his third assignment of error, the plaintiff contends that the district court erred in failing to instruct the jury that assumption of risk is not a defense under the FELA. Plaintiff argues that without a cautionary instruction explaining that there is a difference between contributory negligence and assumption of risk, the jury could easily confuse the issues.

It is not error for the trial court to refuse a requested instruction when it has, on its own motion, fairly and fully instructed the jury on a party's theory of the case. *Steed v. Oak Ridge Equestrian Ctr.*, 224 Neb. 792, 401 N.W.2d 495 (1987). All of the instructions given must be read together and if taken as a whole correctly state the law, are not misleading, and adequately cover the issues, there is no prejudicial error. *Bergman v. Anderson*, 226 Neb. 333, 411 N.W.2d 336 (1987); *First West Side Bank v. Hiddelston*, 225 Neb. 563, 407 N.W.2d 170 (1987). In proceedings under the FELA, where assumption of risk is not made an issue by the pleadings or the evidence, an assumption of risk instruction should not be given. *Ellis v. Union P. R. R. Co.*, 148 Neb. 515, 27 N.W.2d 921 (1947).

The jury was first instructed to decide the question of

negligence on the part of the railroad. The jury was then instructed to decide the question of contributory negligence on the part of the plaintiff as mitigation of damages. With regard to the first cause of action, the jury returned a general verdict in favor of the defendant. As stated in *Clark v. Pennsylvania Railroad Company*, 328 F.2d 591, 595 (2d Cir. 1964), where the jury is first instructed to decide the question of negligence on the part of the defendant before deciding the question of contributory negligence, and a verdict is returned for the defendant, "it is extremely improbable that the jury ever reached the only issue to which assumption of risk would have any relevancy."

With regard to the truck accident, insofar as the third assignment of error is concerned, assumption of risk was not made an issue by the pleadings, nor was it made an issue at trial. As stated in *Clark v. Burlington Northern, Inc.*, 726 F.2d 448, 452 (8th Cir. 1984), " 'where that "defense" [of assumption of risk] has been neither pleaded nor argued, [such an instruction] serves only to obscure the issues in the case.' " Plaintiff relies on *Koshorek v. Pennsylvania Railroad Company*, 318 F.2d 364 (3d Cir. 1963). In that case, the court determined that the failure to give an assumption of risk instruction constitutes reversible error where the jury might have confused contributory negligence with assumption of risk. Assumption of risk has not been raised as an issue in the present case. We do not find *Koshorek* controlling.

Plaintiff contends that assumption of risk was discussed by the jury. He attempts to establish that fact by the affidavit of juror Yvonne Wilson. That fact could not be established by a juror's affidavit. Neb. Rev. Stat. § 27-606(2) (Reissue 1985) provides as follows:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith . . . . Nor may his affidavit or evidence of any statement by

him indicating an effect of this kind be received for these purposes.

As stated in *Lambertus v. Buckley*, 206 Neb. 440, 443, 293 N.W.2d 110, 112 (1980), " 'It is a well-established rule in the federal courts and the Nebraska court that a jury verdict may not be impeached as to occurrences in the jury room which inhere in the verdict by an affidavit of a juror.' " The trial court did not err in refusing to give the assumption of risk instruction. Plaintiff's third assignment of error is without merit.

In his fourth assignment of error, the plaintiff contends that the district court erred when it failed to strike juror Steve Bowen for cause, or in the alternative, to declare a mistrial. In his brief, plaintiff contends that the plaintiff was denied a fair trial because juror Bowen "possessed and demonstrated" an obvious prejudice against the plaintiff. Brief for appellant at 33.

During the course of the trial, the court told counsel the following:

I feel obligated to tell counsel that today, juror number one, Mr. Bowen, came into my office during the recess this morning and at that time he asked if he could speak to me and I said yes and he said that he wanted me to know that he felt that he should talk to me since the plaintiff's mother testified that she was with the Syracuse Bank. Mr. Bowen told me that as a result of some work his company did, he has had a dispute with the Syracuse Bank over the payment of what I took to be a bill for work done either directly for the bank or for a general contractor who had done some work for the bank. And I asked him if he thought that this would be a factor in his ability to decide the case on the evidence and the law that I would give the jury and he said no, but he wanted me to know.

Then he said that he also wanted me to know that one of the three lawsuits that he referred to on his voir dire examination was a lawsuit that involved a union. He said at that time he didn't think that there was going to be so much union stuff in this case and he stated that his company won the case but that it was now on appeal. And I asked him if that was going to make any difference to

him in this case and he said no, but he wanted me to be aware of it.

Also this same juror contacted me on December 3rd, he came into my office at a recess in the afternoon and he asked if he could ask me a question and I said yes and he said can the jurors ask questions in court during the trial. And I said no, they cannot and he commented well, there are some things where he thought some more questions should be asked and I told him that the jurors could not ask questions.

Then he asked if he could consider observations that he made of the plaintiff in the courtroom during his deliberations and I told him that the jury must decide the case based on what they see and hear in the courtroom and the law that the judge gives the jury. He commented that he had been observing the plaintiff's range of motion of the plaintiff's head and I just told him that the jury will have to decide the case based on the instructions and the law and I thought in view of these three contacts that I should share this information with you for whatever you may think appropriate.

After informing the parties, the court permitted plaintiff's counsel to further voir dire the juror outside the presence of the jury. During that voir dire, the juror testified that he could serve as a fair juror.

At the close of that voir dire examination the plaintiff challenged juror Bowen for cause. The court determined that juror Bowen could decide the case based on the evidence presented, and denied the motion. The court also denied plaintiff's motion for a mistrial, and the trial proceeded.

During jury deliberations, juror Bowen, by note delivered to the trial judge by the bailiff, asked: "Number 1. 'Who hired Friedman? He is retained by the RR Union? When was Friedman hired?' Number 2. 'Can we see the brief filed by Friedman when the lawsuit was begun? When was the lawsuit filed?' "

In response, the court had a message delivered to juror Bowen, stating: "I can't answer your questions."

After receiving the note, the trial judge contacted the parties

that afternoon. Plaintiff's counsel requested a supplemental jury instruction to be read to the jury, as follows:

You are further instructed that you may only decide this case on the evidence that was received during the course of the trial, either in the form of oral testimony, depositions, or documentary evidence. The question of who retained plaintiff's counsel or when the case was filed is not relevant evidence and should not be considered by you.

The court denied this additional requested jury instruction because the court determined that the jury had already been adequately instructed as to the law and what the jury could consider in reaching its verdict. Plaintiff then moved for a mistrial. The motion was denied, as was plaintiff's motion for a new trial.

Charges of juror misconduct must be substantiated by competent evidence on the motion for a new trial. The misconduct complained of must relate to a matter in dispute relevant to the issues in the case, and must have influenced the jurors in arriving at a verdict. *Ellis v. Far-Mar-Co*, 215 Neb. 736, 340 N.W.2d 423 (1983); *Schwank v. County of Platte*, 152 Neb. 273, 40 N.W.2d 863 (1950). Proof of mere indiscretion in the conduct of a juror is not sufficient to avoid a verdict unless the proof establishes that the juror's conduct was of such character that prejudice may be presumed. *Ellis, supra*. The party must show that the questioned conduct entered into a verdict prejudicial or adverse to the party alleging misconduct. *Norquay v. Union Pacific Railroad*, 225 Neb. 527, 407 N.W.2d 146 (1987). The retention or rejection of a juror is a matter of discretion with the trial court. *State v. LeBron*, 217 Neb. 452, 349 N.W.2d 918 (1984).

In the present case, the court informed the parties of the communications with juror Bowen and gave plaintiff's counsel the opportunity to further voir dire juror Bowen. After juror Bowen was questioned a second time by the court and plaintiff's counsel, the court was satisfied that juror Bowen was a fair and impartial juror.

In the present case, the initial voir dire examination of the jury at the beginning of the trial was not made a part of the record. The juror's relationship with unions was brought to the

attention of the court by the juror himself, who informed the court that one of the lawsuits the juror mentioned on his voir dire involved a union. Plaintiff does not challenge the juror's statement, at the initial voir dire, that he had mentioned the fact that he had been involved in three prior lawsuits as a litigant. The matter could have been inquired into by plaintiff's counsel during the initial voir dire examination. A party who fails to challenge prospective jurors for qualifications and passes such jurors for cause waives any objection to their selection as jurors. *Bittner v. Miller*, 226 Neb. 206, 410 N.W.2d 478 (1987); *Schroll v. Fulton*, 213 Neb. 310, 328 N.W.2d 780 (1983). The failure to make appropriate inquiry as to the qualifications of prospective jurors on voir dire waives later objections based on facts that might have been disclosed by such inquiry. *Sayer Acres, Inc. v. Middle Republican Nat. Resources Dist.*, 205 Neb. 360, 287 N.W.2d 692 (1980).

Plaintiff does not contend that juror Bowen gave untruthful responses during voir dire examination or during the subsequent questioning by the court and plaintiff's counsel. In *People v Smith*, 122 Mich. App. 202, 207, 332 N.W.2d 401, 403 (1981), the Michigan Court of Appeals stated the following: "False answers by a juror to questions on voir dire, whether intentional or unintentional, deny the defendant a fair trial if correct answers would have led the parties to challenge him."

With regard to the note which was sent to the court by juror Bowen during jury deliberations, the court instructed juror Bowen that the court could not answer any of his questions. In denying plaintiff's request for supplemental instructions, the court informed the parties that the court was satisfied that the jury had been adequately instructed as to the law and what it could consider in reaching a verdict.

Plaintiff, in his brief, relies on *Kastanos v. Ramos*, 581 S.W.2d 740 (Tex. Civ. App. 1979). In *Kastanos*, the Texas Court of Civil Appeals considered defendants' argument that the damages awarded were excessive and found that "probable injury" had occurred to the defendants, where it was possible the jury had discussed that it should award higher damages than the plaintiff in that case had suffered, in order to pay plaintiff's attorney fees. The Texas court granted defendants a new trial.

In the present case, the plaintiff is contending his damages are too low. *Kastanos* does not support any contention that consideration of plaintiff's attorney fees would lead to too low a verdict. Plaintiff has demonstrated no prejudicial misconduct specifically arising out of this incident. *Norquay v. Union Pacific Railroad, supra.*

There was substantial evidence before the jury to the effect that plaintiff's physical condition was caused by factors other than the accidents and that plaintiff's injuries were not as great as his evidence indicated. The trial court did not abuse its discretion in retaining juror Bowen. Plaintiff's fourth assignment of error is without merit.

In his fifth assignment of error, plaintiff contends that the district court erred when it overruled plaintiff's motion in limine during the course of the trial and permitted evidence to be adduced as to plaintiff's drinking and drug problems.

Prior to trial, on November 2, 1985, the plaintiff filed a motion in limine to prevent the defendant from presenting evidence on two issues: (1) evidence of plaintiff's prior drug use and (2) evidence that the plaintiff had had his driver's license suspended or served time in jail. The court sustained the motion in part, ruling that evidence of the plaintiff's drug use might be admissible and relevant on the issue of lost wages. The judge ruled, however, that the defendant could not cross-examine as to the plaintiff's urinalysis conducted by the railroad unless plaintiff's counsel "opened the door." Evidence as to the plaintiff's driving record was never introduced at trial.

At trial, the examining physician for the railroad was called as a witness by the plaintiff. The witness testified that he had been requested by the railroad to examine the plaintiff in order to determine whether or not the weight-lifting restrictions which had been placed on the plaintiff should be removed. The witness examined the plaintiff on two occasions, on March 4 and July 30, 1985. During cross-examination, he stated that he had routinely gathered a urine sample from the plaintiff, which had been sent to the defendant for testing for controlled substances. No evidence was adduced from witnesses as to the results of that test.

Roger Glawatz, rehabilitation counselor for the Nebraska

Department of Education, testified for the plaintiff. Defendant had referred the plaintiff to Glawatz with regard to plaintiff's back injury. In August 1984, Glawatz began working with the plaintiff. Glawatz obtained a medical release from the plaintiff so that he could gather past medical information from the plaintiff's physicians. The department, after consultation with its own physician, recommended that plaintiff be placed in a job which would not involve lifting more than 20 pounds. Glawatz further testified that sometime in April 1985, he referred the plaintiff to Work Net, a private organization included within the Nebraska department's operations, to provide placement services. Work Net did not accept the plaintiff into its program until June 1985.

Defendant obtained the medical reports contained in Glawatz' file. These reports contained information as to the plaintiff's participation in a 6-week outpatient drug rehabilitation program at the Independence Center in Lincoln from approximately April 1 to May 15, 1985. Defendant's counsel requested a ruling from the court during trial as to how those reports might relate to the court's earlier ruling on plaintiff's motion in limine. The court affirmed its earlier ruling regarding the urinalysis testing, but determined that the plaintiff's participation in a drug treatment program during a period of time in which he was seeking lost wages was relevant.

During cross-examination in the trial, Glawatz stated that the plaintiff's motivation in regard to employment fluctuated during their counseling sessions. The witness further testified that the plaintiff told him that he was required by the railroad to undergo treatment at the Independence Center after a physical examination conducted by the railroad indicated that he had abused drugs. Glawatz further testified on redirect the plaintiff was not immediately accepted into the Work Net program because of concerns regarding plaintiff's participation in the drug abuse program.

The plaintiff was called as a witness by the defendant. The plaintiff testified that the railroad had required him to go through the drug treatment program at the Independence Center before he could return to work. The plaintiff further testified that he had, on "[s]ome occasions in the past," taken

drugs while at work. We first note that the admission or exclusion of evidence is a matter left largely to the discretion of the trial court, whose ruling will be upheld absent an abuse of discretion. *Tank v. Peterson*, 219 Neb. 438, 363 N.W.2d 530 (1985). During the course of the trial, the court allowed the defendant to cross-examine Glawatz on the issue of plaintiff's lost wages as to his opinion concerning the employability of the plaintiff. Prior to cross-examination of Glawatz, the parties were again reminded that the court's ruling on plaintiff's motion in limine had been sustained in part and that testimony concerning the urinalysis conducted by the defendant would not be admissible. At trial Glawatz testified as to notes contained in his file concerning plaintiff's stay at the Independence Center for drug and alcohol abuse.

With regard to the motion in limine, we note that plaintiff's motion did not refer to plaintiff's alcohol abuse and referred only to plaintiff's "cocaine use." There was no direct reference during trial to the use of cocaine by the plaintiff.

There was other competent evidence at trial on the issue of defendant's drug abuse. After Glawatz had testified, the plaintiff was called as a witness by the defendant. Plaintiff testified that he was required by defendant to undergo treatment as a condition of returning to work. Plaintiff's counsel made no objection to this testimony. On cross-examination by his own counsel, plaintiff extensively discussed his treatment for drug and alcohol abuse and admitted that he had used drugs in the course of his employment with the defendant. The error, if any, in allowing Glawatz to testify concerning plaintiff's medical records was harmless, since there was other, competent evidence concerning plaintiff's drug problems. Plaintiff himself "opened the door" to further testimony. Where evidence is objected to which is substantially identical with evidence admitted and not objected to, prejudicial error will not lie because of its admission. *White v. Lovgren*, 222 Neb. 771, 387 N.W.2d 483 (1986).

There was no error in the trial proceedings. The judgment of the district court is affirmed.

AFFIRMED.