# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

| | | |
|---|---|---|
| **WALTER J. BIDDLE, SR.,** | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | Shelby Circuit No. 37195 T.D. |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **NORFOLK SOUTHERN RAILWAY** | ) | Appeal No. 02A01-9605-CV-00122 |
| **COMPANY,** | ) | |
| | ) | |
| Defendant/Appellant. | ) | |

FILED

November 19, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE

THE HONORABLE D'ARMY BAILEY, JUDGE

For the Plaintiff/Appellee:

Patrick S. O'Brien
C. Marshall Friedman
St. Louis, Missouri

Eugene A. Laurenzi
Memphis, Tennessee

For the Defendant/Appellant:

Everett B. Gibson
Ralph T. Gibson
Memphis, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

**OPINION**

This case involves a claim of negligence under the Federal Employers' Liability Act. The plaintiff railroad employee suffered foot and ankle injuries from walking on oversized ballast over an extended period of time. The jury found the railroad fifty percent negligent and the employee fifty percent negligent. In response to a post-trial motion, the trial court struck the jury's finding that the employee was negligent. We affirm.

Plaintiff/Appellee Walter J. Biddle, Sr. ("Biddle"), was an employee of Defendant/Appellant Norfolk Southern Railway Company ("Norfolk Southern"). From the mid-1980's to 1991 or 1992, Biddle worked about seventy-five percent of the time in the forwarding yard of the DeButts Yard in Chattanooga, Tennessee. His job as a carman required him to walk between the tracks and examine the railway cars.

The ground in the forwarding yard is covered with a mixture of rocks called "ballast." Biddle was required to walk on this ballast while he conducted railroad car inspections. Railroad standards in effect in 1987 required that the ballast used in walkways and yards consist of rocks three quarters of an inch in diameter. This ballast is known as number five ballast. During the years in which Biddle worked in the forwarding year, however, the ballast in the yard was generally larger in size. Some of the rocks in the DeButts forwarding yard were two-and-one-half to three inches in diameter. Over the years, several workers complained about the size of the ballast in the forwarding yard, but the situation was not remedied.

Late in 1987, Biddle began having problems with his feet. His podiatrist diagnosed him as having neuromas, painful enlargements of the nerve sheath around a nerve. His podiatrist performed surgery on his left foot early in 1988 and later performed the same procedure on his right foot. Subsequently, in late 1989, Biddle again sought medical advice for pain in his feet. In addition, he was suffering from pain in his ankles. For the first time, Biddle's doctor began to question Biddle about his working conditions, and Biddle described his job and the ballast. Shortly thereafter, in December of 1989, Biddle filed an accident report for twisting his ankle. In January of 1991, Biddle filed this lawsuit, pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C.A. §§ 51 through 60 (1986), seeking damages for injuries caused by walking on the oversized ballast.

At trial, Biddle testified about his duties as a carman:

Q: Take us down and tell us what you do. You have coupled the air hose. What do you do now when you inspect one of these cars?

A: Once I've coupled the air hose and looked up under both sides, up underneath to check the couplers and the running gears and all that stuff, I come up and I'm right on top of the knuckles. Check the knuckles, couplers, bumper castings, carry irons, seal steps, walk ladders, walk boards, and retainer valves, anything that pertains to my job that might be mechanically defective. And then I walk around, start walking down the side of the car, make a visual inspection of the wheels, the brake shoes, truck springs, and the other wheel. And the outside, the portion of the car as I walk along side the car. And do the same thing when I get to the other end.

He testified about the difficulty of performing his duties and watching his step at the same time:

Q: When you're walking down the middle of that walkway trying to inspect these cars, are you looking where you're putting your feet, or where are you looking when you're doing this?

A: In the daytime, you might glance down every once in awhile. But basically you're trying to see all this running gear here, all these wheels and things on the side of these cars here.

* * *

Q: Mr. Biddle, you said that you feel that condition is an unsafe condition. Why do you feel that that ballast rock -- or that rock with the majority of being over two inches is an unsafe condition out in the forwarding yard?

A: Well, it's not a very stable footing. Like if you step on this rock here, your foot is going to tilt. And there's no way you can go along and look at where you're walking and pick out the place you want to step in every step and do your job. No way.

Biddle testified that, prior to his foot problems, he enjoyed hunting in the woods, which also required walking on uneven surfaces.

Other witnesses testified about the difficulty of watching one's footing while inspecting the cars. Avery Buckner, a carman, testified, "Well, ordinarily on the inspections, you're not really looking where you're walking, you assume that -- your inspections are with the trains, and your footing, if it's unlevel, you slide." Another carman, Merlin Wilson, testified, "Usually we're pretty well loaded with equipment: radios, lanterns if it's at night, sometimes a crowbar, or whatever, and we're inspecting cars if we're walking, an inbound cut, and you can't concentrate on where you're walking and inspect at the same time." A witness for Norfolk Southern, Charlie Higgins, a senior general foreman, admitted that a carman could not look at the ground the entire time he was inspecting a car, but added that "by the same token, you can't look at the car and not watch were [sic] you're going."

Biddle introduced into evidence at trial parts of the depositions of Dr. Dennis Luke Bizzoco, Biddle's treating podiatrist, and Dr. Alan Odom, the orthopedic surgeon who treated Biddle for his ankle problems. Both testified that Biddle's job duties, involving repeatedly walking on the ballast,

2

caused his injuries. Dr. Bizzoco acknowledged that walking over uneven terrain while hunting could have been a problem for Biddle. However, he stated that Biddle's primary functions were the cause of his injuries and that the fact that Biddle hunted as a hobby did not change his opinion that Biddle's injuries were caused by his job duties, walking on the ballast.[1] In addition, Dr. Bizzoco testified that he did not suspect that Biddle's work was the cause of his foot problems until late 1989. Dr. Odom stated that walking on any uneven terrain, not just ballast, could have put stress on Biddle's ankle.

In charging the jury, the trial court, over Biddle's objection, instructed the jury that it could consider whether Biddle was contributorily negligent. The jury found that both Norfolk Southern and Biddle were fifty percent negligent. The jury determined that Biddle had suffered $125,000 in damages. Because Biddle was fifty percent negligent, the trial court ruled Norfolk Southern was liable for half that amount, $62,500.

Subsequently, Biddle filed a motion to alter the judgment, arguing that there was no evidence from which the jury could find Biddle contributorily negligent. The trial court granted the motion, explaining:

> I think that there is insufficient evidence here on which the jury could have found contributory negligence. And I refer to the reference in the Mumma v. Redding case . . . where the court observes, according to the language cited, that the record was utterly baring [sic] even of a suggestion that the plaintiff could have acted otherwise than he did, short of stopping work entirely. And since this whole matter revolves around this man walking down this track on this ballast and the claim that well, he should have been watching where he was walking, and referring to the testimony of Mr. Biddle, he said, "Basically you're trying to see all the running gear, all these wheels and things on the side of these cars here." . . . I just don't see how you can penalize an employee who is attempting to do his job conscientiously, inspecting a car and he's walking down the track, and say, "Well, he's not looking enough," and then it gets to be some highly speculative matter. I mean, obviously the man can't do his job inspecting a car, which means that he's got to move. It's not like he's just

---

[1] On redirect examination of Dr. Bizzoco during his deposition, Dr. Bizzoco testified as follows:

Q: Doctor, does the fact that Mr. Biddle hunts as a hobby, does that change your diagnosis as to the causation of his foot and ankle problems?

A: No, because I look at what's done most and I make a decreasing concern. . . . I always go to what you do the most of, because the foot is the terminal structure of weight-bearing. So the question is: what do you bear weight on more than anything else. That's number one.

> inspecting the hinges where he can walk from one point to the other, stop and then look. But apparently his job involved the process of inspecting going down the line of cars, not just at points where he could move and stop. So, obviously, he could not then look always at where he was stepping.

The trial court amended the jury verdict to award the full amount of damages, $125,000, to Biddle. Norfolk Southern now appeals the trial court's amendment of the jury verdict, contending that the court erred in striking the jury's finding that Biddle was fifty percent responsible for his injuries. Norfolk Southern asserts that Biddle was contributorily negligent in three respects: (1) his failure to notify the railroad of his condition, precluding management from reassigning him to another job that would allow him to recover; (2) his hobby, hunting, which requires him to walk on uneven ground, aggravating his condition; and (3) his failure to follow company safety rules requiring him to watch where he was going at all times.

Because the plaintiff's post-judgment motion was in essence a request for a judgment notwithstanding the verdict, we review *de novo* the trial court's grant of this motion. *Smelser v. Norfolk Southern Railway*, 105 F.3d 299, 306 (6th Cir. 1997). "A JNOV is proper when the evidence permits only one reasonable conclusion as to the verdict." *Pierce v. Southern Pac. Trans. Co.*, 823 F.2d 1366, 1369 (9th Cir. 1987) (citing *Peterson v. Kennedy*, 771 F.2d 1244, 1252 (9th Cir. 1985)). This standard requires us to consider whether the defendant has not proven an element of its case. *Smelser*, 105 F.3d at 306. The court must examine only the defendant's evidence and draw all inferences in its favor, and then determine whether the defendant has presented more than a scintilla of evidence to support its claim of contributory negligence. *Id.*

This lawsuit was filed under FELA. Under FELA, unlike Tennessee's comparative fault doctrine, the finding that a plaintiff is partially responsible for his injuries, even if over fifty percent, merely mitigates his damages. 45 U.S.C.A. § 53 (1986) ("[T]he fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. . . ."). Assumption of the risk is not a defense under FELA. 45 U.S.C.A. § 54 (1986) ("[S]uch employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . ."); *see also Birchem v. Burlington Northern R.R.*, 812 F.2d 1047, 1049 (8th Cir. 1987).

4

In its oral ruling on Biddle's motion, the trial court cited *Mumma v. Reading Co.*, 247 F. Supp. 252 (E.D. Penn. 1965), a FELA case. In *Mumma*, the plaintiff railroad employee was injured in two accidents, only one of which is pertinent here. The first occurred while the plaintiff, Mumma, was inspecting engines being refueled by another employee. *Id.* at 254. The fuel had overflowed onto the icy walkway that Mumma used when conducting his inspections. Mumma slipped on the walkway and was injured. The jury found that Mumma was guilty of contributory fault, and his damages were proportionately reduced. Mumma filed a post-trial motion to modify the judgment. The trial court stated that there was not even a suggestion in the record that Mumma "could have acted otherwise than he did, short of stopping work entirely." *Id.* at 254. The trial court found that, at most, Mumma could have been guilty of assumption of the risk, a defense that is unavailable in FELA actions. *Id.* at 254-55. Accordingly, the court struck the jury's assessment of fault against Mumma and entered judgment in Mumma's favor for the full amount of damages. *Id.* at 260-61.

In another FELA case, *Wilson v. Burlington Northern, Inc.*, 670 F.2d 780 (8th Cir. 1982), the plaintiff was injured while assisting other employees in railroad car maintenance duties. At trial, the jury was given an instruction on contributory fault by the plaintiff, and the jury subsequently returned a verdict in favor of the employer. *Id.* at 782. The plaintiff appealed, claiming that there was no evidence that he contributed to his injuries. The defendant argued that the plaintiff's actions in assisting other employees were the employee's choice, and that, therefore, it was not error to instruct the jury regarding contributory negligence. *Id.* at 783. The Eighth Circuit reversed, finding that the contributory negligence instruction was error. The Court stated: "Under the circumstances present here, Wilson's decision to help . . . was not a matter of free choice nor was it in any way unreasonable. He was simply doing his job and assisting other employees in need of help - as the railroad fully expected him to do." *Id.*

In this case, Norfolk Southern asserts that Biddle was contributorily negligent by not watching where he stepped at all times. However, like the trial court, we do not see how Biddle could have acted otherwise, "short of stopping work entirely." *Mumma*, 247 F.Supp. at 254. Biddle's work required him to walk alongside the railroad cars, on the ballast, visually inspecting the cars. If his eyes had stayed fixed on the ballast, he could not have performed his duties.

5

Likewise, he could not stand in one place and inspect the cars. The evidence on this issue is insufficient to support a finding of contributory negligence.

Norfolk Southern also asserts that Biddle was contributorily negligent because his hobby, hunting, required him to walk on uneven ground, aggravating his injuries. In order to support a finding that Biddle was contributorily negligent, Norfolk Southern must show not only Biddle's negligence, but also that this negligence proximately caused his injuries. *See Wilson*, 670 F.2d 780, 784 (8th Cir. 1982) ("[S]ince there was no evidence that Wilson's own negligence contributed to . . . his injuries, the district court erred by permitting the jury to consider the issue.") When asked whether Biddle's hunting could have caused his problems, Dr. Bizzoco, Biddle's treating podiatrist, stated that the fact that Biddle hunted as a hobby did not change his diagnosis as to causation. Dr. Odom, who performed the surgery on Biddle's ankle, testified only that any kind of uneven surface could have contributed to Biddle's ankle pain. This evidence is insufficient to support Norfolk Southern's allegation that Biddle's hunting worsened his condition. Therefore, the evidence of Biddle's hobby is insufficient to support a finding of contributory negligence.

Norfolk Southern also alleges that Biddle was contributorily negligent because he continued to work in the same job for over sixteen months even after he was diagnosed with neuromas, without telling Norfolk Southern that the size of the ballast was aggravating his condition. Dr. Bizzoco, stated that after he performed the initial surgery on Biddle's feet, the patient recuperated normally. Sixteen months later, in November, 1989, Biddle returned to Dr. Bizzoco, complaining of pain in his ankle and foot. Dr. Bizzoco testified that only then did they begin "to talk about the type of surface that he walked on and whatnot." This was the first time that the doctor informed Biddle that he felt that Biddle's work activities were causally related to his problems. The doctor stated: "[W]e went over all of the facts, that it's an uneven surface. You know, I never thought of that. [The ballast] is an uneven surface and it's irregular and it does not support weight." At trial, Biddle testified, "I never did think anything about this neuroma being work related or have [sic] anything to do with any sort of uneven surfaces or whatever. I didn't even know what a neuroma was." It is apparent from this testimony that neither Biddle nor his doctor knew that walking on ballast was the cause of Biddle's problems until he returned to Dr. Bizzoco with new complaints after his recovery from the first surgery was complete. Therefore, Biddle's failure during this time period to report to Norfolk Southern that the cause of his foot and ankle problems was work-related cannot be

6

considered contributory negligence.

The decision of the trial court is affirmed.  Costs are assessed against the Appellant, for which execution may issue, if necessary.


_____HOLLY KIRBY LILLARD, J.

**CONCUR:**


_____
**W. FRANK CRAWFORD, P. J., W.S.**


_____
**DAVID R. FARMER, J.**